Dennis A. TRECKER, on behalf of himself and all others similarly situated, Plaintiff,

v.

MANNING IMPLEMENT, INC., et al., Defendants.

Civ. No. C74–3023.

United States District Court, N. D. Iowa, C. D.

Oct. 15, 1976.

Russell S. Wunschel, James R. Van Dyke and Warren L. Bush of Wunschel Law Firm, Gary L. McMinimee, Carroll, Iowa, for plaintiff.

Hegland, Newbrough, Johnston & Brewer, Ames, Iowa, Robert P. Malloy, Goldfield, Iowa, James L. Kramer, Fort Dodge, Iowa, Thomas L. McCullough, Sac City, Iowa,

Charles I. Goodman, Grundy Center, Iowa, Eugene G. Sarno, Lake Mills, Iowa, Jerry C. Estes, Fort Dodge, Iowa, Charles M. Manly, Grinnell, Iowa, James A. Brewer, Ames, Iowa, Eugene Davis, Des Moines, Iowa, Erwin E. Stamp, Bellevue, Iowa, McMahon & Cassel, Algona, Iowa, J. A. Reynoldson, Osceola, Iowa, M. D. Allison, Rockford, Iowa, J. L. Kuehnle, Mechanicsville, Iowa, James E. Houser, Belmond, Iowa, John L. Butler, Eldora, Iowa, Francis Fitzgibbons, John G. Martens, Estherville, Iowa, Baker, Miller & Baker, by Brian R. Johnson, Humboldt, Iowa, Willard M. Freed, Iowa City, Iowa, Gary F. Anderson, Tama, Iowa, Ronald K. Landsness, Atlantic, Iowa, Locher, Locher & Strittmatter, Monticello, Iowa, for defendants.

## MEMORANDUM AND ORDER

HANSON, Chief Judge.

This suit is a civil antitrust action based upon allegations of conspiracy and price-fixing in the sale of International Harvester Corporation (IH) farm machinery parts by franchised, independent IH dealers in Iowa. The plaintiff, Dennis Trecker, filed this action on behalf of himself and all those who purchased IH parts from certain independent dealers in Iowa between May 7, 1970 and December 31, 1971. Federal jurisdiction is based on the Sherman Act, 15 U.S.C. § 1, *et seq.,* and 28 U.S.C. § 1337; a number of pendent state law claims are also asserted. Pending before the Court is plaintiff's motion for class action certification pursuant to Rule 23, Federal Rules of Civil Procedure.

### I. FACTUAL BACKGROUND

The International Harvester Corporation provides its company-owned stores with a price book containing four separate prices for each IH farm machinery part. The prices are Item (dealer's cost); Contract (large volume sales price); C.T. (discount price); and List (retail price). These company-store price books were also made available to independent IH dealers, such as the defendants. The books contain the preface that:

Dealers or Distributors using this list are advised that the prices contained herein are not intended, nor should they be interpreted, to be determinative of the resale prices of such Dealers and Distributors.

Early in 1971 a voluntary organization of the independent dealers in Iowa was formed, entitled the International Harvester Dealers Council. Through the efforts of certain Council members, a new price book containing the same parts as the IH book and the same price classifications was printed. This new book, referred to as the "bogus price book" by the plaintiff, was made available on July 14, 1971 to the independent dealers who wished to purchase it. The prices in the book were a uniform 10% higher than those in the IH parts book.

Plaintiff's amended complaint lists 109 defendants who are asserted to be "corporations, partnerships and proprietors engaged in the business of retail sales of International Harvester parts within the state of Iowa." The Court's examination of the amended complaint reveals that some 56 separate IH retail distributors are represented among the defendants. The gist of plaintiff's case is that the 109 defendants, through a conspiracy involving the IH Dealers Council, fixed artificial prices at the 56 various dealerships operating in Iowa. This conspiracy was implemented by the use of the "bogus price book," which was available to dealers from July 14, 1971 to August 31, 1971. During this six-week period, plaintiff purchased IH parts from one of the defendant dealerships, Manning Implement Company. By virtue of these transactions, he seeks to bring this action on behalf of all purchasers of IH parts from the various named defendants. Trecker himself has dealt only with Manning Implement Company.

### II. RULE 23, FEDERAL RULES OF CIVIL PROCEDURE

Rule 23 has been in its present form since 1966; it reads as follows:

*Class Actions*

(a) Prerequisites to a Class Action. One or more members of a class may sue or be sued as representative parties on behalf of all only if (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class.

(b) Class Actions Maintainable. An action may be maintained as a class action if the prerequisites of subdivision (a) are satisfied, and in addition:

(1) the prosecution of separate actions by or against individual members of the class would create a risk of

(A) inconsistent or varying adjudications with respect to individual members of the class which would establish incompatible standards of conduct for the party opposing the class; or

(B) adjudications with respect to individual members of the class which would as a practical matter be dispositive of the interests of the other members not parties to the adjudications or substantially impair or impede their ability to protect their interests; or

(2) the party opposing the class has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole; or

(3) the court finds that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy. The matters pertinent to the findings include: (A) the interest of members of the class in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already commenced by or against members of the class; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; (D) the difficulties likely to be encountered in the management of a class action.

The plaintiff may represent the proposed class in this cause only if all four of the Rule 23(a) requirements are met, and the requisites of either Rule 23(b)(1), 23(b)(2), or 23(b)(3) are satisfied. In considering the propriety of plaintiff's motion, the Court has studied the briefs of the respective parties, as well as the depositions and answers to interrogatories on file. To date, discovery in this case has been limited to matters pertaining to class certification. To the extent the Court relies on that discovery, and comments on the proof which will be necessary to establish any particular claims, it is only in the context of whether Rule 23 has been satisfied. The Court is fully aware that a "preliminary determination of the merits" of plaintiff's claim is not germane to the resolution of his pending motion. *See Eisen v. Carlisle & Jacquelin,* 417 U.S. 156, 177–79, 94 S.Ct. 2140, 40 L.Ed.2d 732 (1974).

### A. Rule 23(a)(1) Numerosity and Rule 23(a)(2) Commonality

■ The numerosity requirement of Rule 23(a)(1) has clearly been established. Although the exact size of the proposed class is unascertained, plaintiff states that it will consist of more than 1,000 and less than 100,000 members. Indicative of the size of the class is the fact that one of the 56 dealers, Mr. Hendrickson, states that he had between 700 and 800 customers in 1971. Thus, it is clear that joinder of the proposed class members, the customers of the named dealers, is impractical.

■ Rule 23(a)(2) requires that there exist questions of law or fact common to the class. For purposes of this subdivision, the Court deems that there are sufficient common questions of law to satisfy its requirements. The legal questions of conspiracy and price-fixing under 15 U.S.C. § 1 are undeniably "common" to each member of the proposed class. While the Court has

grave misgivings as to whether sufficient common *facts* exist, those misgivings are not fatal to Rule 23(a)(2) compliance. As was stated regarding Rule 23(a)(2) in *Fertig v. Blue Cross of Iowa,* 68 F.R.D. 53, 57 (N.D. Iowa 1974),

> As a general rule all that this section requires is *either* common questions of fact *or* common questions of law, and the fact that other questions may remain as to individuals is not controlling. *Like v. Carter,* 448 F.2d 798 (8th Cir. 1971); . . . ; *Dolgow v. Anderson,* 43 F.R.D. 472, 490 (E.D.N.Y. 1968). Here ample common legal and factual issues exist. Indeed some courts have found common questions in the allegation of a conspiracy. *Morris v. Burchard,* 51 F.R.D. 530, 532 (S.D.N.Y. 1971); *Siegel v. Chicken Delight, Inc.,* 271 F.Supp. 722 (N.D.Cal. 1967).

Under the record in this case, plaintiff has shown sufficient common questions of law to satisfy Rule 23(a)(2).

### B. Rule 23(a)(3) Typicality

Rule 23(a)(3) requires that "the claims or defenses of the representative parties are typical of the claims or defenses of the class . . .". Defendants argue that the Rule 23(a)(3) standard has not been met, asserting that Mr. Trecker's claims are not "typical" of all those who purchased IH parts from the 56 various retail outlets between May 7, 1970 and December 31, 1971.

■ Two distinct matters are relevant to this typicality argument. The first relates to when the alleged price-fixing could have been in operation. The common thread linking the defendants in this case is their possession and asserted use of the "bogus price books." The depositions on file establish that these books were first made available to the independent dealers on July 14, 1971. On August 31, 1971 the books were confiscated by state officials as pertinent to criminal price-fixing charges brought under state law. Thus, the relevant time period

for the alleged price-fixing appears to be a six-week period in mid-1971, rather than the year and one-half period alleged in the complaint. Further, the purchases for which the plaintiff claims injury all occurred within that six-week period when the "bogus price books" were in circulation. Based on these facts, the Court deems that the record requires confining the pertinent time period of this case to the span between July 14, 1971 and August 31, 1971. Because Trecker made no relevant purchases outside that time period, his claim cannot be "typical" of the claims of purchasers who did, given the limited existence of the "bogus price book." Even with the scope of the possible class being so curtailed, the question remains as to how "typical" Trecker's claims are in relation to those purchasers who dealt with the IH dealers during that six-week period. *See generally Dolgow v. Anderson,* 43 F.R.D. 472, 491–93 (E.D.N.Y. 1968).

■ Viewed in terms of the typicality of *legal* claims, the similarity of Trecker's claim to those of the proposed class members is apparent. The "overriding considerations typifying each claim (are) the need to prove:

> '(1) that there was a conspiracy to fix prices in violation of the antitrust laws; (2) that prices were fixed pursuant thereto; and (3) that plaintiffs purchased products at prices which, as a result of the conspiracy, were higher than they should have been.' "

*State of Iowa v. Union Asphalt & Roadoils, Inc.,* 281 F.Supp. 391, 401 (S.D. Iowa 1968), *quoting Philadelphia Electric Company v. Anaconda American Brass Company,* 43 F.R.D. 452, 457 (E.D. Pa. 1968).

As this Court's later discussion will demonstrate, the Court deems that plaintiff's claim is *factually* dissimilar from the claims of most of the class members he seeks to represent.[1] For purposes of Rule 23(a)(3),

---

1. The Court's concern in this regard goes to the fact that Trecker had no dealings with any of the defendants other than Manning Implement. In *La Mar v. H & B Novelty & Loan Company,*

489 F.2d 461 (9th Cir. 1973), a plaintiff who had dealt with one Oregon pawn broker sought to represent a class representing the customers of *all* Oregon pawn brokers in a truth-in-lending

however, the undeniable similarity of the legal claims shared by the plaintiff and the class he proposes to represent satisfies the typicality requirement, given the Court's restriction of the relevant time period to the six weeks when the "bogus price books" were outstanding.

### C. Rule 23(a)(4) Representation

The final prerequisite of Rule 23(a) is that "the representative parties will fairly and adequately protect the interests of the class." This section of the rule has been interpreted to require that the interests of the class representative and the class at large "be co-extensive (or at least that they not conflict) and that plaintiffs' counsel possess the proven ability to conduct such litigation." *Sommers v. Abraham Lincoln Federal Savings & Loan, supra,* at 588.

It must be conceded that this is not a case where the interests of Trecker and all those parts purchasers he seeks to represent can be termed co-extensive. Trecker, a customer of only one of the 56 retailers, may have been treated wholly different at Manning Implement than customers of other dealers were. He simply has not been directly affected by the sales practices of any of the other defendants. Plaintiff does allege a grievance against those defendants, however, for he claims they conspired to cause him damage. *Cf. La Mar v. H & B Novelty & Loan Company, supra.* In this regard, his interests would not conflict with those class members who had direct contact with other dealers. While the Court views with some concern the fact that class representative Trecker has a very small stake in the outcome of the case [2] and has dealt with only ⅟₅₆th of the retailers, these matters alone are not fatal to the adequacy of representation question. *See Lamb v. United Security Life Company,* 59 F.R.D. 25, 31–32 (S.D. Iowa 1972). Given an absence of conflict between Trecker and the class at large, and in view of the Court's belief that plaintiff's counsel will vigorously prosecute the case, the Court deems that Rule 23(a)(4) has been satisfied.

To summarize, plaintiff Trecker has satisfied the four requirements of Rule 23(a) as to those persons who purchased IH parts from independent dealers in Iowa between July 14, 1971 and August 31, 1971. The Court will now consider whether the prerequisites of any subdivision of Rule 23(b) have been met.

### III. RULE 23(b)

Plaintiff seeks class action certification under Rule 23(b)(1) *and* Rule 23(b)(3), and, alternatively, under either Rule 23(b)(1) or Rule 23(b)(3). Rule 23(b)(2) clearly does not apply to this case because the requested relief is money damages, not the declaratory or injunctive relief envisioned by that subdivision. *Fertig v. Blue Cross of Iowa, supra,* at 59.

suit. In denying class action certification, the court stated:

> In brief, typicality is lacking when the representative plaintiff's cause of action is against a defendant unrelated to the defendants against whom the cause of action of the members of the class lies. *Id.* at 465.

The *La Mar* court's concern with autonomous defendants gives this Court pause here. *La Mar,* however, did not involve allegations of conspiracy. *Id.* at 466. This distinction is an important one, especially in the typicality context. Whether plaintiff's conspiracy allegation suffices to allow common questions of law and fact to *predominate* over individual questions will depend upon the cohesiveness of action of the defendants. *See* discussion of Rule 23(b)(3), *infra.* When viewed in terms of typicality under Rule 23(a)(3), however, plaintiff's conspiracy allegations are sufficient to allow the Court to rule that common questions do exist. *See Sommers v. Abraham Lincoln Federal Savings & Loan Ass'n,* 66 F.R.D. 581, 588 (E.D. Pa. 1975).

2. While Trecker's actual stake in the outcome of this case is unclear, it appears that he was overcharged between $2.40 and $10.00 for parts during the relevant time period. It also should be noted that Trecker is a man of modest wealth; defendants assert that the adequacy of representation claim can be determined solely by reference to Trecker's inability to finance the extensive proceedings which class certification will necessarily entail. *See Ralston v. Volkswagenwerk, A.G.,* 61 F.R.D. 427, 433–34 (W.D. Mo. 1973). In view of the Court's conclusion that the Rule 23(b)(3) requisites are not met in this litigation, the Court will not address those arguments.

*A. Rule 23(b)(1)*

■ The risks inherent in individual actions contemplated by Rules 23(b)(1)(A) and (B) are not of sufficient magnitude to require class action certification in this case. The "inconsistent or varying adjudications" of Rule 23(b)(1)(A) do not include the simple case where two individuals sue the same defendants for the same relief and one wins while the other loses. The meaning intended is the situation where the two individuals are suing the defendants for different and incompatible relief. *Landau v. Chase Manhattan Bank, N.A.*, 367 F.Supp. 992 (S.D.N.Y. 1973). Here, contrary to plaintiff's contention, an action by one member of the proposed class will not preclude actions by other class members. Because of the numerous individual questions involved, a matter to be discussed in greater depth under Rule 23(b)(3), it is unlikely that any given individual case would be dispositive of another. As commentators have recognized, certification is more appropriately granted or denied based on Rule 23(b)(3) as opposed to Rule 23(b)(1) when the suit involves separate but common questions of fact or law. Schuck, *An Overview of Class Actions,* 70 F.R.D. 251, 294 (1976); *see also* F.R.C.P. 23, Advisory Committee Notes, 39 F.R.D. 69, 102 (1966). Thus, it is the Court's conclusion that the Rule 23(b)(1) risks inherent in individual actions are not sufficient here to merit class action certification. The propriety of class treatment of this case is to be decided on the basis of Rule 23(b)(3).

*B. Rule 23(b)(3)*

As previously indicated, to merit favorable Rule 23(b)(3) treatment, it must be established that (1) common questions of law or fact predominate over individual questions and (2) the class action is superior to other methods for the fair and efficient adjudication of the controversy.

*1. Rule 23(b)(3) Predominance*

To determine whether common questions of law or fact predominate over individual questions, it is necessary to first consider the elements which plaintiff must establish in order to recover on his claim against the defendants.

■ Plaintiff's federal antitrust claim against the defendants is that they entered into an agreement to fix prices on IH parts, and that said agreement was implemented by the defendants' use of the "bogus price books." Price-fixing is illegal *per se* under the Sherman Act, 15 U.S.C. § 1. *Citizen Publishing Co. v. United States,* 394 U.S. 131, 135, 89 S.Ct. 927, 22 L.Ed.2d 148 (1969). Plaintiff seeks treble damages for himself and all other victims of the price-fixing under 15 U.S.C. § 15, which provides that

Any person who shall be injured in his business or property by reason of anything forbidden in the antitrust laws may sue therefor in any district court of the United States . . . and shall recover threefold the damages by him sustained, and the cost of suit, including reasonable attorney's fees.

Plaintiff asserts that his allegations of conspiracy and price-fixing present common questions of law and fact which surely predominate over the individual questions inherent in class action. Plaintiff urges that "the essence of the case is the *conspiracy* and not the (individual) transactions." Plaintiff's Reply Brief at 5 (emphasis in original). Plaintiff also cites the following language from 7A Wright & Miller, *Federal Practice and Procedure,* § 1781:

Proof of the conspiracy is viewed as the central issue in (antitrust class actions) because if it is established, all the class members will be allowed to recover. In short, whether a conspiracy exists is a common question that is thought to predominate over the other issues in the case and has the effect of satisfying the first prerequisite of Rule 23(b)(3).

It is the Court's conclusion that these broad statements of law, while possibly apt in certain cases where the defendants act as a unified whole, are inapplicable to the situation presented by this case.

Plaintiff ignores a substantial body of law which is typified by the following state-

ment from *Suckow Borax Mines Consolidated v. Borax Consolidated, Ltd.,* 81 F.Supp. 301 (N.D. Cal. 1948), *aff'd* 185 F.2d 196 (9th Cir. 1950), *cert. denied,* 340 U.S. 943, 71 S.Ct. 506, 95 L.Ed. 680 (1951):

The cause of action in a suit brought under 15 U.S.C.A. § 15 is for injuries suffered as a result of a conspiracy in violation of the Anti-Trust Laws and not the existence of the conspiracy itself. *Burnham Chemical Company v. Borax Consolidated, Ltd.,* supra; *Foster & Kleiser Co. v. Special Site Sign Co.,* supra. The Fourth Circuit Court of Appeals has expressed the law in *Glenn Coal Co. v. Dickinson Fuel Co.,* 72 F.2d 885, at page 887:

"In a civil suit under this section, the gist of the action is not merely the unlawful conspiracy or monopolization * * *, but is damage to the individual plaintiff resulting proximately from the acts of the defendant which constitute a violation of the law. A mere conspiracy with intent to violate the law while it may be the basis of a valid indictment under the criminal sanction of the Anti-Trust Act, does not give rise to a personal civil suit for damages."

All of the cases cited by the plaintiffs as upholding their contention that the existence of a conspiracy is in itself sufficient basis for a cause of action are cases of criminal prosecution by the government. A private action for damages is not an action for the common good, *Shurtz v. Foster & Kleiser Co.,* D.C., 29 F.Supp. 162; and the fact that a criminal action may be instituted by the government by reason of the existence of a conspiracy to violate the Anti-Trust Laws does not add to the right given to a private individuals to sue for damages caused by such a conspiracy. *Burnham*

*Chemical Company v. Borax Consolidated, Ltd.,* supra.

81 F.Supp. at 305. *Accord, Morning Pioneer, Inc. v. Bismark Tribune Co.,* 493 F.2d 383, 387 (8th Cir.) *cert. denied,* 419 U.S. 836, 95 S.Ct. 64, 42 L.Ed.2d 63 (1974); *Association of Western Railways v. Riss & Company,* 112 U.S.App.D.C. 49, 299 F.2d 133, 135 (1962); *National Auto Brokers Corp. v. General Motors Corp.,* 60 F.R.D. 476, 489–90 (S.D.N.Y. 1973).

■ In this regard, it is essential to consider exactly what the proof as to Trecker's claim will and will not establish in relation to the claims of the class at large. In order to recover in his own right, plaintiff must establish (1) conspiracy, (2) price-fixing, (3) resultant injury to him, and the amount of damages suffered. *State of Iowa v. Union Asphalt and Roadoils, supra,* at 401; *Boshes v. General Motors Corp.,* 59 F.R.D. 589, 600 (N.D. Ill. 1973). Even if Trecker were to prove all the elements essential to his claim, and even if the conspiracy therein proven was established as to all of the defendants, individual questions of fact would still predominate over the common issues in this case. This would follow because there is nothing in this record which would allow the Court to conclude that if Manning Implement fixed *its* price, all other dealers would have fixed theirs. Stated differently, proof by Trecker of Manning's liability will not establish liability as to the other 55 retailers. Trecker's case simply will not involve proof of the actual pricing practices of the other dealers; he dealt only with Manning. Proof of actual price-fixing at any store is a prerequisite to the eventual recovery of that store's customers. No such proof of price-fixing at the other stores, or circumstances allowing the inference thereof, exists in this record.[3] The variances in the dealers' pricing policies are amply shown by the discovery conducted to date.

---

**3.** Plaintiff places heavy reliance on *Goldfarb v. Virginia State Bar,* 421 U.S. 773, 95 S.Ct. 2004, 44 L.Ed.2d 572 (1975) to support the contention that it is the *agreement* to fix prices, not the actual fixing thereof, which is actionable. In *Goldfarb,* however, "petitioners clearly proved that the fee schedule fixed fees." *Id.* at 785, 95

S.Ct. at 2012. No such proof exists in this case as to the behavior of the 56 retailers. Further, the Supreme Court's *Goldfarb* opinion was not addressed to the need of numerous class members to prove up their individual damages under 15 U.S.C. § 15.

Only 4 of the 56 stores' personnel have been deposed. While many more defendants have responded to plaintiff's interrogatories, their answers indicate significant variance in pricing policy from dealer to dealer. While the evidence does establish that certain dealers had the "bogus price books" during the period in issue, no showing has been made that those dealers who had the books actually used them. Further, even if the books were used, there is no showing that such use was uniform. In fact, the depositions of equipment dealers Harms, Hendrickson and Blyth clearly reveal that varying price techniques were employed by the defendants. The "bogus price books" contained four separate prices as to each part. Deciding which separate price to apply was a matter left to the individual dealer. Some dealers were increasing their prices long before the books were issued; others were undercutting the company-suggested prices, even after the "bogus" books were disseminated. Thus, individual factual questions abound as to the policies of each dealer and the effect of those policies on prices.

Further individualized questions of fact exist as to damages. Most, if not all, the defendant dealers operate in rural areas on a varying basis of familiarity with their clients. Even if Trecker were to prove that Manning engaged in an across-the-board 10% price hike to all customers while in possession of the "bogus price book," this would alleviate the damages question only as to Manning's customers. No helpful information would be gleaned as to how to assess the damages of the other dealers' clients. In *In re Hotel Telephone Charges,* 500 F.2d 86 (9th Cir. 1974), the Court was faced with a similar request for class action treatment as to "over 100" defendant hotels accused of conspiring to raise room rate by adding a charge for telephone services to all room rentals. That court's comments in reversing the trial court's grant of class certification are pertinent here:

> The (plaintiffs') Sherman Act claims, while charging hundreds of hotels with similar conduct, nonetheless raise individual questions that could require decades of litigation. The appellees' allegation that a conspiracy existed to violate the antitrust laws does not insure that common questions will predominate. Advisory Committee's Note, *supra* at 103. In order substantially to establish each hotel's involvement in a conspiracy to violate the antitrust laws, each hotel's knowing participation would be a requisite element of proof. Furthermore, since the surcharges varied from hotel to hotel, the amount of each defendant's surcharge would necessarily require individual treatment, as would the period in which each hotel's surcharge was in effect. And while the amount of each hotel's surcharge might constitute prima facie evidence of the amount of damage, the appellants might rebut that evidence by showing what the cost of each hotel's telephone service charge would have been in a competitive market. *See* Pollack, The "Injury" and "Causation" Elements Of a Treble Damage Antitrust Action, 57 Nw.L.Rev. 691, 692 (1963); Timberlake, The Legal Injury Requirements And Proof of Damages In Treble Damage Actions Under The Antitrust Laws, 30 Geo. Wash.L.Rev. 231 (1961–62). . . . After the basis for computing damages had been individually determined for each defendant, each member of the class seeking recovery would then be required to prove that he patronized the hotel while the surcharge was in effect and that he absorbed the cost of the surcharge. Furthermore, it would then be necessary to compute the amount of damages due the class member.

*Id.* at 89.

Discovery in this case reveals that the factors which determined the price that a certain customer paid for a part were at least as numerous as the number of dealers who used the price books. Plaintiff will be required to show the amount he should have been charged by Manning Implement, Inc., not merely that prices went up at Manning Implement. At any rate, his case clearly will not establish the pricing prac-

tices of the 55 other retailers. It is not merely the amount of damages that is pertinent here, but the fact of damage to the plaintiff, and whether the damage, if any, was the proximate result of the alleged conspiracy and price-fixing. The amount of monetary damages is only relevant after the fact of damage has been established. *San Antonio Telephone v. American Telephone and Telegraph,* 68 F.R.D. 435, 438–40 (W.D. Texas 1975). Plaintiff's argument for certification is wholly dependent upon an assumption of dealer price-policy uniformity—an assumption unsupported in the record.

In ruling that individual fact questions predominate over common questions in this case, the Court is not implying that antitrust class suits against dealers will satisfy Rule 23 only when representative plaintiffs exist who purchased from each separate store. While plaintiff's lack of involvement with all but one of the retailer-defendants certainly hurts his cause, it is mainly the disparate behavior of those defendants, as shown by the discovery to date, which is fatal to the class action. This is not a case where a tight nucleus of common-behaving defendants have acted in a manner which affects a great number of people in the same way. The defendants here operate autonomous retail dealerships, governed by their own pricing policies. Not only will individual questions as to damages abound in this case, but individualized liability must be established as to all of the defendants, or at the very least as to a large enough sample to allow the inference that the other dealers behaved in the same way. Proof of liability as to only one such defendant, in view of the record pertinent to this motion, will not support such an inference.

In short, the Court simply cannot conclude that common questions of law and fact will predominate over individual questions as required by Rule 23(b)(3). Indeed, the record of this case is overwhelmingly to the contrary.

*2. Rule 23(b)(3) Superiority*

Plaintiff's motion must also fail because the proposed class action is not "superior to other methods for the fair and efficient adjudication of the controversy." A key determinant in this regard is the manageability of the case. Rule 23(b)(3)(D).

■ The primary management problem facing this proposed class action stems from the disparate nature of the defendants' pricing practices previously discussed. Plaintiff proposes to represent the customers of all defendants upon allegations that only one of them fixed his prices to plaintiff's detriment. Even as to Trecker himself, problems have arisen in determining how many IH parts he actually purchased during the relevant time period. This uncertainty must be noted in predicting how the entire case would be processed. Apparently, plaintiff feels that his case-in-chief would establish the elements of conspiracy and price-fixing as to all retailers, and that damages could be established perfunctorily.[4] Just as in plaintiff's case, however, each class member's damages would have to be established by wading through the thousands of invoices which reflect the various defendants' sales. Even when IH parts sales are isolated on the invoices, however, there would remain the matter of determining whether the price for that item had been inflated by the defendant as alleged in plaintiff's complaint. This inquiry would trigger an evaluation of the pricing policies of that particular defendant—a matter untouched in Trecker's main case as to all defendants except Manning. In effect, what is proposed as a "damage" assessment will be transformed into innumerable separate liability trials. Such a procedure, of course, will be tremendously time-consuming and costly. Further, when the notice costs are deducted, there is little likelihood of much recovery for the individual class members, taking Trecker's claims as guidance. In its current posture, this class action is one which is

---

**4.** This is not a case where the class representative's suit will establish class-based *liability,* with individualized questions of damages remaining to be resolved. Trecker's case, if successful, will establish liability for only ¹/₅₆th of the class members.

"not likely to benefit anyone but the lawyers" bringing it. *Eisen v. Carlisle & Jacquelin,* 391 F.2d 555, 567 (2d Cir. 1968). The pending case is not the superior way to dispose of the underlying controversy.

## IV. ORDER

For the above reasons,

IT IS HEREBY ORDERED that plaintiff's motion for class action certification is overruled.

Theodore W. Anderson, Thomas E. Smith, Neuman, Williams, Anderson & Olson, Chicago, Ill., for plaintiff.