**Vickie FOGIE and Joan Leonard, on behalf of themselves and all others similarly situated, Plaintiffs,**

v.

**RENT–A–CENTER, INC., a Kansas Corporation, TEUSA Holdings, Inc., a Delaware corporation, Thorn EMI (USA) Inc., a Delaware corporation, and Thorn EMI North America Holdings, Inc., a Delaware corporation, Defendants.**

Civ. No. 4–92–533.

United States District Court,
D. Minnesota,
Fourth Division.

March 2, 1993.

Seymour J. Mansfield, Richard Johnathon Fuller, Mansfield & Tanick, David L. Ramp, Legal Aid Society, Phillip Allen Cole, Mark Stageberg, Lommen Nelson Cole & Stageberg, Timothy Lee Thompson, Legal Aid Soc. of Mpls., Minneapolis, MN, Joel W. Lavintman, Goggins & Lavintman, Mendota Heights, MN, for Vickie Fogie, Joan Leonard, on behalf of themselves and all others similarly situated, Angela Adams,.

J. Patrick McDavitt, John G. Troyer, Briggs & Morgan, Minneapolis, MN, Kelly

W. Schemenauer, Peter E. Strand, Shannon L. Spangler, John C. Dods, Shook Hardy & Bacon, Kansas City, MO, for Rent–A–Center, Inc.

J. Patrick McDavitt, Briggs & Morgan, Minneapolis, MN, Peter E. Strand, Shannon L. Spangler, John C. Dods, Shook Hardy & Bacon, Kansas City, MO, for TEUSA Holdings, Inc., Thorn EMI (USA) Inc., Thorn EMI North America Holdings, Inc., Thorn EMI, PLC, a United Kingdom ltd. liability co.

## MEMORANDUM OPINION AND ORDER

### DIANA E. MURPHY, Chief Judge.

Plaintiffs brought this action against Rent–A–Center, Inc., TEUSA Holdings, Inc., Thorn EMI (USA) Inc., and Thorn EMI North America Holdings, Inc. (collectively RAC) alleging that RAC's rent to own contracts are consumer credit sales within the meaning of the Consumer Credit Sales Act (CCSA), Minn.Stat. § 325G.15, and violate the Minnesota deceptive and unlawful trade practices statutes, Minn.Stat. §§ 325F.69 and 325D.44, consumer protection statutes, Minn. Stat. § 325G.16, subd. 4, 336.2–201, .2–207, .9–503, and .9–504, the Truth in Lending Act, 15 U.S.C. § 1601, et seq. and Racketeer Influenced and Corrupt Organization (RICO), 18 U.S.C. § 1961, et seq. Plaintiffs also allege that the standard RAC contract is unconscionable and usurious. They move for class certification and summary judgment declaring that the CCSA, Minn.Stat. § 325G.15 applies to the standard RAC contract.[1]

### I.

Little discovery has been conducted in this case and these motions rest primarily on the pleadings. RAC rents consumer goods through renewable leases. The leases allow the customer to become the owner of the rented property upon payment of a specified number of installments. RAC normally discloses the fair market value of its goods as 55% of the total price charged to the consumer, including the sales tax.

On September 19, 1990, Vickie Fogie visited RAC's West Broadway store to look for living room furniture and selected a five piece wicker living room set. Before she executed the rent to own contract, a RAC employee asked her to provide her address, length of residence, landlord, employment, income, source of income, and the names and addresses of four friends and two relatives in the Minneapolis area. After RAC verified this information, Fogie and RAC executed the contract for the used furniture. Under the contract, Fogie was required to pay $17.03 per week for 87 weeks or $73.79 per month for 20 months before she owned the furniture. RAC disclosed the furniture's fair market value as $814.89.

### II.

Plaintiffs seek to certify the following class:

All persons who have entered into so-called "rent-to-own" contracts in Minnesota with the Defendants, or any of their predecessors or successor in interest in a written form substantially similar to that contained in Appendix No. 1, from or after August 1, 1990.[2]

Plaintiffs argue that class certification is appropriate under Federal Rule of Civil Procedure 23. They maintain that class certification requirements are met under Rule 23(b)(1) because there is a risk of inconsistent adjudication, under Rule 23(b)(2) because they seek equitable relief, and under Rule 23(b)(3) because common questions of law and fact predominate over individual questions and a class action is the best method for fair and efficient adjudication.

Defendants do not oppose conditional certification of a class under Rule 23(b)(2) for claims alleging violations of Minnesota consumer protection statutes, violations of the

---

1. In their memorandum of law in opposition to the motion for class certification, defendants request an order regulating how plaintiffs may contact RAC clients regarding this case; plaintiffs disagree. Since no motion has be filed, this request need not be addressed.

2. Such contracts executed prior to August 1, 1990 are the subject of another action pending before Judge Paul A. Magnuson. *Starks v. Rent–A–Center*, Civ. No. 3–89–0786.

**1402**

Truth in Lending Act, usury, illegal contract, and collection of unlawful debt in violation of RICO. They consent to certification, however, only if the class is limited to customers who actually purchased goods. Defendants oppose certification for claims alleging deceptive and unlawful trade practices, unconscionability, and RICO violations predicated on mail or wire fraud because they involve issues of individual fact. They argue that class certification under either 23(b)(1) and (b)(3) would be inappropriate, but that a test case approach should be used if one were certified under the latter section.

Plaintiffs reply that any class should include all customers who entered into rental purchase agreements regardless of whether they actually purchased the leased products. They also argue that claims for deceptive and unlawful trade practices, unconscionability, and RICO violations predicated on mail or wire fraud are appropriate for class certification because they involve common questions of law and fact. They oppose a test case approach because it would unnecessarily limit discovery.

■ The party seeking class certification bears the burden of establishing that the case is certifiable as a class action. *Bishop v. Committee on Professional Ethics and Conduct of the Iowa State Bar Ass'n.*, 686 F.2d 1278, 1288 (8th Cir.1982). If the moving party does not conclusively demonstrate that the Rule 23 requirements are satisfied on the pleadings alone, then the court should allow the parties to conduct discovery and present further evidence. *Walker v. World Tire Corp.*, 563 F.2d 918, 921 (8th Cir.1977). The record for this motion consists of the pleadings and a few affidavits regarding the Rule 23(a) requirements. The defendants argue that the issue of class certification should be deferred until a more substantial record is developed through discovery, but they have not articulated any specific facts which are necessary before the court decides the class certification issue. The record before the court is adequate to decide whether a class should be certified and plaintiffs have established that they are entitled to class certification.

There are four threshold requirements for a class action:

(1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interest of the class.

Fed.R.Civ.P. 23(a).

■ Plaintiffs have established that this case satisfies all four preliminary requirements. First, joinder is impracticable because there are potentially thousands of plaintiffs. *See, e.g., Arkansas Educ. Ass'n. v. Board of Educ.*, 446 F.2d 763, 765–66 (8th Cir.1971). Second, there are common issues of both law and fact. All class members signed the same contract and one of the issues presented is whether Minn.Stat. § 325G.15 applies to this form contract. Third, the named plaintiffs signed the same contract as other class members, and their claims are typical of those of the entire class. Finally, the named plaintiffs are adequate class representatives. To be adequate the plaintiffs and their attorneys must vigorously prosecute the action. *Herbst v. Able*, 47 F.R.D. 11, 15 (S.D.N.Y.1969). The attorneys for the plaintiffs have vigorously prosecuted this action and there is no reason to believe that the named plaintiffs will not fairly and adequately protect the interests of the class.

Plaintiffs must also establish that the proposed class satisfies at least one of the three sets of requirements presented in Fed.R.Civ.P. 23(b). Certification is permissible under (b)(1) if the prosecution of separate actions by individual members of the class would create a risk of:

(A) inconsistent or varying adjudications with respect to individual members of the class which would establish incompatible standards of conduct for the party opposing the class, or (B) adjudications with respect to individual members of the class which would as a practical matter be dispositive of the interests of the other members not parties to the adjudications or substantially impair or impede their ability to protect their interests.

■ This case does not fit under 23(b)(1)(A) because plaintiffs are not suing for different and incompatible relief. *See Trecker v. Manning Implement, Inc.*, 73 F.R.D. 554, 560 (N.D.Iowa 1976). Moreover, Rule 23(b)(1)(A) was designed to protect the party opposing the class and the defendant may waive it by opposing certification. *Chmieleski v. City Products Corp.*, 71 F.R.D. 118, 155 (W.D.Mo.1976).

■ Rule 23(b)(1)(B) was designed to protect plaintiffs when there is a limited fund to satisfy judgment, and in this case plaintiffs have not produced evidence that there is a limited fund to satisfy judgment. The class may therefore not be certified under Rule 23(b)(1)(B).

Certification under Rule 23(b)(2) requires that:

> the party opposing the class has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole.

RAC's standard form contract is generally applicable to the class and defendants agree that the class should be certified for claims alleging violations of Minnesota consumer protection statutes, violations of the Truth in Lending Act, usury, illegal contract, and collection of unlawful debt in violation of RICO under 23(b)(2). They argue, however, that the claims of deceptive and unlawful trade practices, unconscionability, and RICO violations predicated on mail or wire fraud should not be certified because they involve issues of individual fact. They also argue that the class should be limited to customers who actually purchased goods.

The Minnesota Illegal and Deceptive Trade Practices Act requires disclosure of the "equivalent fair market value for goods offered under a consumer credit sale." Minn.Stat. §§ 325F.86(k) and 325F.84, subd. 3. For injunctive relief, the class only needs to establish that the material omission had a capacity to deceive. Minn.Stat. §§ 325D.45 and 325F.69, subd. 1.

Defendants uniformly disclose the value of goods as equal to 55% of the total payments in the contract. Plaintiffs claim that this practice results in RAC disclosing a price significantly higher than the equivalent fair market value. This uniform practice could be a violation of the Trade Practices Act regardless of any oral representations accompanying the form, and this claim is appropriate for class certification.

■ The defendants also argue that the unconscionability claims raise issues of individual fact. A contract is unconscionable if it is "such as no man in his senses and not under delusion would make on the one hand, and as no honest and fair man would accept on the other." *Matter of Estate of Hoffbeck*, 415 N.W.2d 447, 449 (Minn.App.1987) *quoting, Hume v. United States*, 132 U.S. 406, 10 S.Ct. 134, 33 L.Ed. 393 (1889). RAC allegedly uniformly misrepresents the fair market value of its goods through its value of goods formula. This is a uniform practice affecting all members of a class action which could be determined to be unconscionable regardless of representations made to individual plaintiffs.

■ Finally, defendants assert that the mail and wire fraud claims raise issues of individual fact. The assertion of half truths or the concealment of material facts can support a mail or wire fraud claim. *United States v. Beecroft*, 608 F.2d 753, 757 (9th Cir.1979). A scheme reasonably calculated to deceive people of ordinary prudence and comprehension satisfies the intent requirements. *Sun Savings and Loan Ass'n v. Dierdorff*, 825 F.2d 187, 196 (9th Cir.1987). Mail or wire fraud claims can also be established by demonstrating reckless misrepresentations. *United States v. Farris*, 614 F.2d 634, 638 (9th Cir.1979), *cert. denied*, 447 U.S. 926, 100 S.Ct. 3022, 65 L.Ed.2d 1120 (1980). Plaintiffs argue that the defendants uniformly failed accurately to disclose the value of their goods and failed to disclose and/or misrepresented RAC's rights or intent with regard to default and the collection of interest. This uniform practice may be adequate to establish a RICO violation and on the record before the court, this claim should be certified for class action treatment.

RAC also argues that the class should be limited to actual purchasers because customers who do not make all required payments do not own the goods and their transactions are not protected by the CCSA. The CCSA includes agreements to sell in its definition of sale of goods, Minn. Stat. § 325G.15, subd. 5, and contracts which are consumer credit sales are sales for all purposes, Minn.Stat. § 325G.16, subd. 5. The CCSA protects customers who do not complete their payments and the class should not be restricted to actual purchasers.

A class should be certified under Rule 23(b)(2) for all claims asserted by plaintiffs and it should be defined as:

> All persons who have entered into so-called "rent-to-own" contracts in Minnesota with the Defendants, or any of their predecessors or successor in interest in a written form substantially similar to that contained in Appendix No. 1, from or after August 1, 1990.

Plaintiffs also seek certification under Rule 23(b)(3) to obtain the damages they seek. Rule 23(b)(3) certification is permissible if:

> the court finds that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy.

Whether a class action is superior depends on:

> (A) the interest of members of the class in individually controlling the prosecution or defense of separate actions;  (B) the extent and nature of any litigation concerning the controversy already commenced by or against members of the class;  (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum;  (D) the difficulties likely to be encountered in the management of the class action.

Neither individual damages issues, *Bryan v. Amrep Corp.*, 429 F.Supp. 313, 317–18 (S.D.N.Y.1977), nor minor differences in liability issues prohibit class certification under Rule 23(b)(3).  *Reichert v. Bio–Medicus*, 70 F.R.D. 71, 75 (D.Minn.1974)

The form contract signed by all the potential class members is a common fact, and legal obligations arising from it present common issues of law.  There will be differences in individual damages, dependent on the goods purchased and the payments required, but these should be fairly simple to determine after liability is decided.  The common issues of law and fact outweigh the relatively minor issue of individual damages.

In addition, a class action is superior to other available methods for the fair and efficient adjudication of this case.  Class actions often remedy legal wrongs when individual claims are relatively small and the costs of litigation prohibit individual actions.  *Buccholtz v. Swift and Co.*, 62 F.R.D. 581, 598 (D.Minn.1973).  This is a complex case involving relatively small individual claims, and it is unlikely that individual class members would pursue litigation.  The plaintiffs do not have a strong interest in individual control of this action, no other litigation has been filed, this forum is appropriate, and management of the case should not be excessively burdensome.  A class action will provide a fair and efficient adjudication of the claims asserted by the plaintiffs and it is a superior method of adjudicating this controversy.

There is a substantial risk, however, that if class action notices were sent to RAC customers, RAC would face extreme disruption of its business before the issue of liability were decided.  A test case is appropriate if class notification presents a significant threat to a defendant's business.  *Katz v. Carte Blanche Corp.*, 496 F.2d 747, 762 (3d Cir.), *cert. denied*, 419 U.S. 885, 95 S.Ct. 152, 42 L.Ed.2d 125 (1974).  If RAC customers were to receive notice of this action, they might decide to withhold their payments. This is the type of disruption that justifies a test case approach.  A test case would determine whether RAC is liable to one plaintiff for violations of Minn.Stat. §§ 8.31 subd. 3a, (unlawful trade practices act and consumer fraud act) 334.01 *et seq.* (usury) and 18 U.S.C. § 1961 *et seq.* (RICO) and the amount of damages that person should recover.  It could also determine an appropriate formula

for calculating the amount of damages that each class member should recover. Although Rule 23(b)(3) requirements are satisfied for these claims, notice should be deferred until a test case is tried on the issue of liability.

## III.

■ The plaintiffs also seek summary judgment on their claim for declaratory judgment that the CCSA applies to the RAC contract. Plaintiffs argue that RAC transactions are consumer credit sales as defined by the CCSA, Minn.Stat. § 325G.15 subd. 5. They assert that § 325G.16, subd. 4 provides that if contracts are consumer credit sales, then they are consumer credit sales for all purposes. They maintain that the Minnesota Rental Purchase Agreement Act (RPAA), Minn.Stat. § 325F.84, does not alter earlier law and that it preempts earlier statutes only to the extent that they conflict.

Defendants respond that the RPAA regulates all rental purchase transactions in Minnesota. They argue that the RPAA conflicts with the CCSA in a number of ways including the definition of a rental purchase agreement, disclosure requirements, consumer acquisition of ownership, default procedure, and risk of loss. They assert that the court should not consider legislative history because the RPAA is clear on its face and because legislative history is unreliable. They maintain that even if the legislative history is considered, the CCSA does not apply to its contracts.

Plaintiffs reply that the RPAA does not supersede the CCSA. They also argue that there are no conflicts between the RPAA and the CCSA. They assert that legislative history should be considered and that it clearly supports their position.

On a motion for summary judgment, all material facts and inferences are construed in favor of the non-moving party. *AgriStor Leasing v. Farrow*, 826 F.2d 732, 734 (8th Cir.1987). The moving party must demonstrate that "there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). A fact is material if it affects the outcome of the case. *Anderson v.*

*Liberty Lobby, Inc.*, 477 U.S. 242, 255, 106 S.Ct. 2505, 2513, 91 L.Ed.2d 202 (1986). To defeat a motion for summary judgment, the non-moving party must present specific evidence to establish that there are material facts in dispute creating a genuine issue for trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23, 106 S.Ct. 2548, 2552–53, 91 L.Ed.2d 265 (1986).

The CCSA provides that a terminable lease may be a consumer credit sale if:

(a) the lessee has the option to renew the contract by making the payments specified in the contract;

(b) the contract obligates the lessor to transfer ownership of the property to the lessee for no other or a nominal consideration upon full compliance by the lessee with his obligations under the contract including any obligation incurred by reason of the exercise of an option by the lessee to renew the contract; and

(c) the payments contracted for by the lessee, including those payments pursuant to the exercise of an option by the lessee to renew the contract, are substantially equivalent to or in excess of the aggregate value of the property and services involved.

Minn.Stat. § 325G.15.

Application of these tests shows the RAC contract is a consumer credit sale. For example, Fogie's contract provided that she would pay $1,486.93 before she would own the furniture, and RAC estimates that the combined value of the goods and services it provided to Fogie was $1,391.13 over the 87 week period. Even assuming that this is an appropriate value for the goods and services provided by RAC, Fogie's payments would exceed the aggregate value of the property and services provided by RAC. In addition, the lessee has the option to renew the RAC contract by making advance rental payments, and the contract provides for ownership if the lessee renews the agreement for the specified number of installments.

■ Defendants argue that the CCSA should not apply to the RAC contract because the RPAA supersedes the CCSA. If

the RPAA and CCSA conflict, then the RPAA applies to the rental purchase agreement and supersedes the CCSA. Minn.Stat. § 325F.85. A statute must be construed so that every clause, word, or sentence has meaning. *Gale v. Commissioner of Taxation,* 228 Minn. 345, 37 N.W.2d 711 (1949). The RPAA conflicts clause would be meaningless if the RPAA completely superseded the CCSA; its presence indicates that the legislature envisioned circumstances where there would be no conflict and both would apply. Moreover, the legislative history supports this conclusion. The Minnesota Senate deleted an amendment which would have explicitly repealed Minn.Stat. § 325G.15, subd. 5. During the debate over whether the CCSA should be repealed, Senator Laidig stated, "Bring this industry under the control that [it] was meant to come under in 1981." He also noted that "this industry would like us to say that they're not a consumer credit sale, that the security interest laws ought not to apply, that this is not a sale of goods, and it certainly is." The legislature did not intend for the RPAA completely to supersede the CCSA.

■■■■ RAC also argues that the provisions of the RPAA and CCSA conflict in a number of different ways. The RPAA preempts the CCSA if the two acts conflict, Minn.Stat. § 325F.85, but the statutes should be construed to avoid or reconcile conflicts if possible. Minn.Stat. § 645.26, subd. 1.

The defendants argue that the definition of a rental-purchase agreement in the RPAA conflicts with the CCSA and that it is impossible to comply with the disclosure provisions of both statutes. The RPAA defines a rental-purchase agreement using the terms lease, lessor, and lessee. Minn.Stat. § 325F.84. Although the RPAA discusses rental-purchase agreements as leases, the conflicts clause recognizes that both acts may apply to the same transaction simultaneously. The conflicts clause would be meaningless if the definition of the rental-purchase agreement prohibited these transactions from ever being considered consumer credit sales. Fur-

thermore, the term rental-purchase agreement itself demonstrates a recognition that these contracts are a hybrid between a lease and a sale. The definition of a rental-purchase agreement in the RPAA does not conflict with the CCSA.

The disclosure requirements of the two acts also do not conflict. The RPAA requires the lessor to disclose that the transaction is a rental purchase agreement in advertising, Minn.Stat. § 325.88, subd. 1. The lessor must also disclose information about the rental-purchase agreement in its contracts and sales displays. Minn.Stat. § 325F.86 and 88. The CCSA prohibits the lessor from including certain provisions in the contract, Minn.Stat. § 325G.16, subd. 2, and these prohibited clauses are not required by the RPAA. Minn.Stat. § 325F.91. The disclosure requirements and prohibited clauses in the acts do not conflict and RAC could comply with both.

Defendants also argue that the acts provide inconsistent requirements for transferring ownership. Under the RPAA, the contract must disclose, if applicable, that the lessee does not own the property until all the required payments have been made.[3] Minn. Stat. § 325F.85. The CCSA provides that the lessor retains only a security interest in the goods. Minn.Stat. § 325G.16, subd. 4.

Again, the acts are not in conflict. A layperson believes that ownership means the clear title to property, but the law recognizes many different concepts including security interest, title, and possession which permit identification of a variety of rights that might exist in the same property simultaneously. The RPAA disclosure requirement is simply a form of consumer protection designed to ensure that a consumer knows that her ownership of the goods will not be complete until all payments are made. The use of the word ownership in this disclosure requirement does not mean that the lessor retains a certain type of legal interest in the property. Moreover, the RPAA does not specify when ownership must be transferred; it merely requires the lessor to disclose that the lessee

---

**3.** The RPAA also requires that the lessee be able to purchase the products at any time after the first periodic payment is made for 55% of the

difference between the total of scheduled payments and the total amount paid on the account.

does not own the goods until all payments are made if this is a provision of the contract. Because the RPAA does not dictate the type of interest that a lessee has in property leased through a rental-purchase agreement, its provisions cannot conflict with the CCSA determination that the lessor has only a security interest in the property.

Defendants also argue that the RPAA default requirements conflict with the CCSA as interpreted by plaintiffs. In the complaint, plaintiffs argue that if the CCSA applies to the RAC contract, then RAC must comply with Uniform Commercial Code (UCC) provisions which require a secured party to dispose of collateral in a commercially reasonable manner, Minn.Stat. § 336.9–504. Defendants assert that if the UCC is applicable, then it conflicts with RPAA default provisions. Minn.Stat. §§ 325F.89 and .90. The only issue properly before the court is whether the CCSA applies to the standard RAC contract. Any potential conflict between the UCC and the RPAA need not be addressed. The CCSA does not provide any default requirements and the defendants have not shown that the RPAA and CCSA conflict.

Finally, defendants argue that the RPAA conflicts with the CCSA regarding the risk of loss. The RPAA places the risk of loss on the lessee unless the lessee takes affirmative steps to avoid this risk. Minn.Stat. § 325F.95, subd. 1. Although this may provide evidence, as plaintiffs argue, that the rental-purchase agreement is actually a consumer credit sale, the statutes do not conflict in their treatment of risk of loss.

The defendants have not raised any genuine issue of material fact precluding summary judgment and there is no evidence that the RPAA and CCSA conflict. Therefore, the motion by plaintiffs for partial summary judgment that the RAC contracts are consumer credit sales within the meaning of Minn.Stat. §§ 325G.15 and .16 for all purposes should be granted.

### ORDER

Accordingly, based upon the above, and all the files, records, and proceedings herein, IT IS HEREBY ORDERED that:

1. The claims by plaintiffs for declaratory and injunctive relief pursuant to Minn.Stat. §§ 8.31 subd. 3a, 325F.69, 325D.44, 325G.16, 336.2–302, and 334.01 and 18 U.S.C. § 1961 *et seq.* are certified for class action treatment pursuant to Fed.R.Civ.P. 23(b)(2). The class shall consist of all persons who have entered into rent to own contracts on or after August 1, 1990 in the State of Minnesota with the defendants or any of their predecessors or successors in interest in a written form substantially similar to that executed by plaintiff Fogie.

2. The claims for damages asserted by plaintiffs under Minn.Stat. §§ 8.31 subd. 3a, 334.01 *et seq.* and 10 U.S.C. § 1961 *et seq.* are certified for class action treatment pursuant to Fed.R.Civ.P. 23(b)(3), but notice is deferred pending a determination of liability on the merits. The class shall consist of all persons who have entered into rent to own contracts on or after August 1, 1990 in the State of Minnesota with the defendants or any of their predecessors or successors in interest in a written form substantially similar to that executed by plaintiff Fogie. The statute of limitations is tolled with respect to the class.

3. The motion by plaintiffs for partial summary judgment is granted; the contracts used by defendants are consumer credit sales for all purposes within the meaning of Minn.Stat. §§ 325G.15 and 325G.16.