WILCOX DEVELOPMENT COMPANY; Mid-Willamette Village Ore., Ltd.; Glen L. Wilcox and Lorraine Wilcox, individually, and on behalf of all others similarly situated, Plaintiffs,

v.

FIRST INTERSTATE BANK OF OREGON, N.A.; and First Interstate Bancorp, Defendants.

A.C. DISTRIBUTING CO., Arthur J. Cherry, Sr., Arthur J. Cherry, Jr., individually and on behalf of all others similarly situated, Plaintiffs,

v.

FIRST STATE BANK OF OREGON, Pacwest Bancorp, Defendants.

Civ. Nos. 81–1127–RE, 81–1128–RE.

United States District Court, D. Oregon.

March 4, 1983.

**442**

Henry A. Carey, Henry A. Carey, P.C., John D. Ryan, John D. Ryan, P.C., Leslie M. Roberts, Kell, Alterman & Runstein, Portland, Or., for plaintiffs.

Fredric A. Yerke, William B. Crow, Miller, Nash, Yerke, Wiener & Hager, Roland F. Banks, J. Stephen Werts, Guy C. Stephenson, Schwabe, Williamson, Wyatt, Moore & Roberts, Portland, Or., for defendants.

### OPINION

REDDEN, District Judge:

#### I. Background

These cases are before me on plaintiffs' motions for class certification. The cases present similar legal issues, and so are discussed in one opinion.

#### A. Facts

##### 1. Wilcox v. First Interstate Bank

Plaintiffs, Glen L. and Lorraine Wilcox, bring this action for damages and injunctive relief based on alleged violations of the Racketeer Influenced and Corrupt Organizations Act (RICO), 18 U.S.C. §§ 1961–1965 (1976), and section 1 of the Sherman Act, 15 U.S.C. § 1 (1976). The defendants are First Interstate Bank of Oregon, N.A. (FIOR) and its holding company, First Interstate Bancorp.

Plaintiffs obtained a loan from FIOR with an interest rate of "prime rate" plus two percent. The RICO claim alleges that defendants engaged in a scheme to defraud plaintiffs by misrepresenting that prime rate was "the most favorable interest rate offered by FIOR to its most credit-worthy borrowers." Plaintiffs allege that defendants used the United States Postal Service to execute this scheme by mailing inflated interest demands. This use of the mails, plaintiffs contend, constitutes mail fraud and thus a racketeering activity within the meaning of RICO. Plaintiffs seek treble damages and attorneys' fees under 18 U.S.C. § 1964(c):

> Any person injured in his business or property by reason of a violation of section 1962 of this chapter may sue therefor in any appropriate United States district court and shall recover threefold the damages he sustains and the cost of the suit, including a reasonable attorney's fee.

The antitrust claim alleges that defendants conspired with other financial institutions to fix the prime rate at a common, non-competitive level. Plaintiffs seek treble damages and attorneys' fees under 15 U.S.C. § 15:

> Any person who shall be injured in his business or property by reason of anything forbidden in the antitrust laws may sue therefor in any district court of the United States in the district in which the defendant resides or is found or has an agent, without respect to the amount in controversy, and shall recover threefold the damages by him sustained, and the cost of suit, including a reasonable attorney's fee.

Plaintiffs move for certification of the following class:

all borrowers from First Interstate Bank of Oregon, N.A., who have been charged interest on an obligation pursuant to an evidence of indebtedness utilizing the term "prime rate" or words having the equivalent meaning.

### 2. *A.C. Distributing v. First State Bank*

Plaintiffs A.C. Distributing, Arthur J. Cherry, Sr. and Arthur J. Cherry, Jr. bring this action for damages and injunctive relief based on alleged violations of RICO, section 1 of the Sherman Act, and breach of contract. The defendants are First State Bank and its holding company, Pacwest Bancorp.

Plaintiffs entered into loan agreements with First State Bank. These agreements provided that interest would accrue at prime rate plus two percent. Plaintiffs understood that prime rate meant "the lowest rate the bank offered to its preferred customers."

Plaintiffs' RICO and antitrust claims parallel the *Wilcox* claims. In addition, plaintiffs claim that the defendants' acts constitute a breach of contract, since plaintiffs thought they were getting the bank's best rate, but in fact were not.

Plaintiffs seek to represent a class consisting of:

all borrowers from First State Bank of Oregon (now "Pacific Western Bank (PWB)"), who have been charged interest on an obligation, pursuant to an evidence of indebtedness utilizing the term "prime" interest rate or "prime rate" or words having equivalent meaning.

### B. *Procedural History*

These cases were filed December 4, 1981. On July 8, 1982, I ordered that motions for class certification would be argued on September 20, 1982. Plaintiffs had not yet filed motions for class certification. Plaintiffs did not file these motions until September 17, 1982 after a call from the deputy clerk. Because of the plaintiffs' late filing, the hearing on the motions was set over until October 25, 1982. At that hearing, I indicated to plaintiffs' counsel that they had not proved that class certification was appropriate; they had "merely mimic[ed] the language of Rule 23." *Doninger v. Pacific Northwest Bell,* 564 F.2d 1304, 1309 (9th Cir.1977). On October 26, 1982, I granted plaintiffs thirty days to supplement the record with factual data in support of their motions. The motions were re-argued on January 4, 1983.

I conclude that plaintiffs still have not carried their burden of proof. I, therefore, deny the motions for class certification.

### II. *Discussion*

#### A. *Applicable Law*

Class certification is proper if plaintiffs show that they meet the requirements of Fed.R.Civ.P. 23(a) and also come within one of the provisions of 23(b). Plaintiffs have the burden to prove that they meet all the requisite elements of class certification. *Doninger, supra,* 564 F.2d 1304. "[T]here must not only be allegations relative to the matters mentioned in Rule 23 ... but, in addition, there must be a statement of basic facts. *Mere repetition of the language of the Rule is inadequate." Id. (quoting Gillibeau v. Richmond,* 417 F.2d 426, 432 (9th Cir.1969) (emphasis in original). Failure to prove any one of Rule 23's requirements destroys the alleged class action. *Rutledge v. Electric Hose & Rubber Co.,* 511 F.2d 668, 673 (9th Cir.1975).

The four requirements of Rule 23(a) are commonly referred to as numerosity, commonality, typicality, and representativeness. The numerosity element requires that class members be so numerous that joinder is impracticable. This district has held that, as a "rough rule of thumb," approximately forty members is sufficient to satisfy the numerosity requirement. *Williams v. Stevenson,* No. 76–311 (D.Or. Feb. 27, 1979).

The commonality requirement is satisfied whenever there is a common question of law *or* fact. *Blackie v. Barrack,* 524 F.2d 891, 904 (9th Cir.1975). "The typicality requirement is designed to assure that the

named representative's interests are aligned with those of the class . . . ." *Jordan v. County of Los Angeles,* 669 F.2d 1311, 1321 (9th Cir.1982). A named plaintiff's claim is typical "if it stems from the same event, practice, or course of conduct that forms the basis of the class claim and is based upon the same legal or remedial theory." *Id.*

■ The final element of Rule 23(a), representativeness, requires that the named plaintiff "fairly and adequately protect the interests of the class." Fed.R.Civ.P. 23(a)(4). To satisfy this element, plaintiffs must prove that their attorneys are qualified, experienced and capable of conducting the litigation. In addition, plaintiffs must show that their interests will not be antagonistic to the interests of the class. *Jordan, supra,* 669 F.2d at 1323.

Plaintiffs must not only prove they satisfy the prerequisites of 23(a), they must also prove that they come within one of the provisions of 23(b). Rule 23(b) provides in pertinent part:

An action may be maintained as a class action if the prerequisites of subdivision (a) are satisfied, and in addition:

(2) the party opposing the class has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief . . . with respect to the class as a whole; or

(3) the court finds that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy. The matters pertinent to the findings include: (A) the interest of members of the class in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already commenced by or against members of the class; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; (D) the difficulties likely to be encountered in the management of a class action.

■ Class certification under 23(b)(2) is not proper where the action seeks money damages as a major portion of the requested relief. *Doninger, supra,* 564 F.2d at 1314. *Accord, McDonnell Douglas Corp. v. United States District Court, Central District of California,* 523 F.2d 1083, 1087 (9th Cir.1975).

■ Certification under 23(b)(3) is proper only if plaintiffs prove that common legal or factual issues *predominate* over individual issues *and* that a class action is the superior method for litigating the controversy. Plaintiffs must prove that a class action is "superior to, and not just as good as, other available methods for handling the controversy." *Rutledge, supra,* 511 F.2d at 673.

Rule 23(b)(3) lists four factors to be considered by the court in deciding whether or not common issues predominate and a class action is superior. These factors are not exhaustive. In considering the interests of individual members in controlling their own cases, the court must inform itself of any litigation actually pending by or against the individuals. Fed.R.Civ.P. 23 advisory committee notes. The court should also consider whether the amounts at stake are so small that individuals would not pursue separate actions. The second factor listed in 23(b)(3) requires the court to consider "the extent and nature of any litigation concerning the controversy already commenced." The existence of other actions can indicate an interest in individual litigation or it can indicate that a class action is needed. 1 H. Newberg, Newberg on Class Actions § 1160(c) (1977).

■ The final factor under 23(b)(3) is manageability. In determining the issue of manageability, the court must consider the essential elements of the action and the proof that may be required to establish these elements. *Kline v. Coldwell, Banker & Co.,* 508 F.2d 226, 236 (9th Cir.1974); *In re Hotel Telephone Charges,* 500 F.2d 86, 89–90 (9th Cir.1974) [hereinafter cited as "Telephone Charges"]. *Accord, Windham*

*v. American Brands, Inc.,* 565 F.2d 59 (4th Cir.1977) (*en banc*), *cert. denied,* 435 U.S. 968, 98 S.Ct. 1605, 56 L.Ed.2d 58 (1978). The court should consider whether damages can be proved by calculations based on a mathematical formula or whether individual proof of injury and damages will be required. *Id.* The court should also consider whether the calculation of damages will be complicated by the need in some cases to allow off-sets against the claim. If the case necessitates individual proof of damages the court should consider the length of court time which will be required to prove damages for each member of the class.

> The uniformity of the quality and price of the product is also likely to have an impact on the manageability of the suit. When the product is homogeneous in nature, and has an unchanging price during the life of the alleged conspiracy, aggregate damage to the class may be easily determined from sales records for the relevant time period. However, an action involving a commodity available in different varieties or at fluctuating prices necessitates examining each sale to determine the defendant's total liability. In this situation a serious manageability problem arises: the court is likely to devote more time to individual damage issues than to ... the existence of a conspiracy.

*Windham, supra,* 565 F.2d at 68, n. 25.

B. *Certification in These Cases*

I conclude that plaintiffs have not sustained their burden of proof that these cases should be certified as class actions.

1. *Rule 23(a) Requirements*

■ Plaintiffs in *A.C. Distributing* contend that they satisfy the numerosity requirement because First State Bank has made approximately 2,000 loans based on prime during the relevant time period. The *Wilcox* plaintiffs claim that FIOR has made at least 6,500 loans based on prime during the last five years. Plaintiffs argue that each loan based on prime rate represents a class member because there is a common definition of "prime rate" and all members of the class must have understood "prime rate" to mean its common definition. Plaintiffs contend that "prime rate" commonly means the lowest interest rate available to the most credit-worthy borrowers and all persons who borrowed money with interest based on prime rate understood that they were getting the lowest rate.

Defendants argue that plaintiffs have not proved numerosity since they have not shown that any of the alleged class members had this same understanding of the term "prime rate." I agree with defendants that plaintiffs have not shown the actual existence of a class because they have failed to prove that other individuals had the same understanding of "prime rate" as the named plaintiffs had. To cure this failure of proof would require individual inquiry into each class member's understanding or knowledge of the term to determine whether or not that individual is a member of the class. This shows that common issues do not predominate in these cases. (See pages 446–447, *infra*).

Plaintiffs do satisfy the other three requirements of 23(a). There are common legal issues in the RICO and antitrust claims.[1] There are also common questions of law with regard to the breach of contract claim in *A.C. Distributing*.[2] Plaintiffs satisfy the typicality element because the named plaintiffs' claims stem from the same course of alleged conduct by defendants and their claims are based upon the same legal theories as the class claims. *Jordan, supra,* 669 F.2d at 1321.

I also find that plaintiffs satisfy the fourth requirement of 23(a)—representativeness. It has not been shown that the named plaintiffs' claims conflict with those of the class. Defendants contend, however,

1. *E.g.,* whether defendants' acts constitute a violation of RICO and the antitrust laws; whether there was a combination and conspiracy to fix the prime rate.

2. *E.g.,* whether defendants' acts constitute a breach of contract.

that plaintiffs' attorneys have not shown themselves to be capable of conducting this litigation. Defendants point out that plaintiffs' counsel did not move for class certification within sixty days of filing this action as required by Local Rule 200–4(b)(3) (formerly 17(c)). In fact, as noted earlier, plaintiffs did not move for class certification until three days before the date the court had set for oral argument on the motion.

In addition to plaintiffs' failure to file a timely motion for class certification, I note that plaintiffs' counsel has been remiss in other filings. On September 13, 1982, plaintiffs filed motions for leave to file amended complaints. The amended complaints basically just enlarged the class to a statewide class. I granted these motions on September 30, 1982. All subsequent battles over class certification have assumed that this larger class was at issue. Plaintiffs, however, did not file their amended complaints until February 8, 1983 (*Wilcox*) and February 11, 1983 (*A.C. Distributing*). There has been no explanation for this delay of over four months.

Nonetheless, I decline to base my decision denying class certification on the alleged inadequacy of plaintiffs' counsel. In these cases, it may simply be that the number of attorneys has interfered with the orderly administration of these cases. I, instead, deny class certification because plaintiffs have failed to prove that common questions of law or fact predominate and that a class action is the superior way to litigate these claims.

### 2. *Rule 23(b) Requirements*

Plaintiffs in *Wilcox* seek to have their class certified under both 23(b)(2) and 23(b)(3). Plaintiffs in *A.C. Distributing* contend that certification is appropriate under 23(b)(3).

■ I find that certification is not proper under 23(b)(2) because the relief plaintiffs

seek relates predominately to money damages. *Doninger, supra,* 564 F.2d at 1314. While plaintiffs do seek an injunction, money damages represent the major portion of the relief sought.

I conclude that class certification is also inappropriate under 23(b)(3). I find that individual issues of membership in the class (see p. 445, *supra*) and proof of injury in fact and damages predominate over the issues common to the class.

■ There are three essential elements in any private antitrust or RICO action: (1) a violation of the antitrust laws or RICO statute; (2) direct injury to plaintiffs from such violation; and (3) damages sustained by the plaintiffs. *Windham, supra,* 565 F.2d at 65.[3] The mere finding of a violation of the statutes will not result in liability. The crux of antitrust and RICO claims is the individual injury. The treble damage remedies provided by the antitrust laws and RICO are

> limited by [their] terms, the only person who may recover damages is one who had been 'injured in his business or property by reason of' a violation. The amount of his recovery, except for costs, is limited to 'threefold the damages *by him* sustained.' The language that Congress used in [the statutes] ... leaves no room for awarding damages to some amorphous 'fluid class' rather than, or in addition to, one or more actually injured persons. It likewise does not permit any person to recover damages sustained not by him, but by someone else who happens to be a member of such class.

*Windham, supra,* 565 F.2d at 66 (*quoting* Handler, *Twenty-fourth Annual Antitrust Review,* 72 Col.L.Rev. 1, 37 (1972)). Thus, class wide proof of injury and damages is not available in these cases. Individual proof of injury and damages could make this case unmanageable as a class action.

---

**3.** Congress patterned RICO's civil remedies after the antitrust laws. S.Rep. No. 91–617 at 81 (1969); 116 Cong.Rec. 35227 (1970), remarks of Representative Steiger. The language of 15

U.S.C. § 15 and 18 U.S.C. § 1964(c) are almost identical. It is therefore appropriate to rely on existing antitrust precedents in analyzing the requisite elements of a RICO claim.

■ I cannot, however, deny certification of a class action on the grounds of manageability if proof of injury and damages may be characterized as "virtually a mechanical task." *Blackie, supra*, 524 F.2d at 905. Plaintiffs contend that computation of damages in these cases should not be complex. Plaintiffs do not, however, offer a suitable mathematical formula for computing damages; they claim that they expect to develop this formula. "Where the court finds ... that there are serious problems *now appearing* it should not certify the class merely on assurance of counsel that some solution will be found." *Windham, supra*, 565 F.2d at 70 (*citing Telephone Charges, supra*, 500 F.2d at 90) (emphasis in original).

It appears unlikely that plaintiffs will ever develop a damages formula. Interest rates are not a homogeneous product with an unchanging price during the life of the RICO and antitrust violations. Thus, to determine damages in these cases, *each* loan and *every* day of the relevant time period must be examined. Without the existence of a mechanical damages formula, trial of *just* the damages portion of these cases would take almost three years.[4] In addition, plaintiffs have not advanced any mechanical method for litigating the issue of injury in fact and membership in the class. I conclude that individual issues of class membership, injury in fact, and damages predominate in the RICO and antitrust claims making class certification inappropriate.

■ Class certification is also inappropriate for the breach of contract claim in *A.C. Distributing*. Plaintiffs base this claim on their understanding that "a bank's prime rate [is] the lowest rate the bank offered to its preferred customers." Plaintiffs contend that defendants breached their contract by charging them an interest rate which was higher than the bank's lowest rate.

Class certification is improper when knowledge of individual class members requires separate adjudications. *Kline, supra*, 508 F.2d 226. The breach of contract claim would require an individual inquiry of each class member's understanding of the term "prime rate." If a class member had knowledge of the bank's definition of prime rate at the time he secured the loan, he would not be entitled to recover, because the definition of prime rate would be a term of the contract with regard to that individual. *See Bernard v. First National Bank*, 275 Or. 145, 155, 550 P.2d 1203 (1975).

Plaintiffs' contention that "prime rate" has a common meaning and that defendants did not explain the term to borrowers does not reduce the need for individual adjudications of the knowledge of class members. "[P]laintiffs have not carried the burden of proof of the predominance of common questions. They have shown that the [defendants] did not discuss their method of computing interest with the borrowers ...., but it does not follow that regular borrowers for business purposes would not be on notice of it." *Bernard, supra*, 275 Or. at 162, 550 P.2d 1203.

I conclude that the individual questions of class membership and each member's knowledge of "prime rate" predominate in the breach of contract claim in *A.C. Distributing*. I deny the motion to certify this claim as a class action.

In light of the management problems noted above, plaintiffs have also failed to prove that a class action is the superior method of litigating these claims. I find that the test case approach will likely accomplish the same result under principles of collateral estoppel. *See Windham, supra*, 565 F.2d at 69.

Plaintiffs contend that the "economic realities" dictate that this case proceed as a

---

**4.** If only thirty minutes is allotted to prove and rebut each damage claim, litigation of the damage issue would consume approximately 166 court days in *A.C. Distributing* and 540 court days in *Wilcox*. These calculations are made on the assumptions that there are 2,000 members of the class in *A.C. Distributing* and 6,500 members in *Wilcox* and that a court day consists of six hours. Effectively, while the damage claims were being litigated, the court could conduct no other business.

class action or not at all, because the claims of individual members are too small to justify separate actions. *Eisen v. Carlisle & Jacquelin,* 417 U.S. 156, 94 S.Ct. 2140, 40 L.Ed.2d 732 (1974). The average estimated damage "indicates that in many instances the damages if recoverable would be substantial." *Kline, supra,* 508 F.2d at 234. Plaintiffs estimate the average individual interest damages to be $12,500 per year. This amount when trebled will be sufficient inducement for individuals to pursue their own actions, especially since attorneys' fees and costs are also recoverable under both RICO and the antitrust laws. *Id.* at 234 n. 5. It is not necessary that these cases proceed as class actions.

III. *Conclusion*

Plaintiffs have not met their burden of proof that these actions should proceed as class actions. Therefore, I deny plaintiffs' motions for class certification.