**T.R. COLEMAN, et al., Plaintiffs,**

v.

**CANNON OIL COMPANY, et al., Defendants.**

**Civ. A. No. 90–T–414–S.**

United States District Court, M.D. Alabama, S.D.

Jan. 30, 1992.

518

Edward M. Price, Jr., Rufus R. Smith, Jr., Dothan, Ala., L. Andrew Hollis, Jr., Jeffrey C. Kirby, Birmingham, Ala., Kenneth Millwood, Aaron Watson, Scott Tippett, John Latham, Sylvia Kochler, Valerie Verduce, Edward C. Brewer, Atlanta, Ga., for plaintiffs.

W. Terry Travis, Dennis Pierson, George L. Beck, Jr., Montgomery, Ala., for Southeastern Oil and McGee Oil.

Joseph Mays, Jr., David Hymer, Cada Carter, Birmingham, Ala., for Home Oil & Thomas Shirley.

Charles L. Robinson, David Proctor, Birmingham, Ala., for Graceville Oil Co.

W. Dennis Summers, Ezra B. Jones, III, Robert Stansfield, Atlanta, Ga. and Clyde

C. Owen, Jr., Montgomery, Ala., for James Sheffield, Sheffield Oil, Herndon Oil, A.W. Herndon Oil, & Davis & Harp Oil.

T.E. Buntin, Jr., Dothan, Ala., and Thomas S. Lawson, James N. Walter, Montgomery, Ala., for Cannon Oil & Vernon Cannon.

N.J. Cervera, Troy, Ala., for Beard Oil.

Charles Stewart, Montgomery, Ala., J. Riley Davis, Tallahassee, Fla., for Sunshine Jr. Food Stores.

Rodney Parrish, pro se.

## ORDER

MYRON H. THOMPSON, Chief Judge.

Upon consideration of the two recommendations of the United States Magistrate Judge entered on December 9, 1991, it is ORDERED:

(1) That all objections to the recommendations be and they are hereby overruled;

(2) That the two recommendations of the United States Magistrate Judge entered on December 9, 1991, be and they are hereby adopted;

(3) That the plaintiffs' motion for class certification, filed on October 31, 1990, and amended on March 28, 1991, be and it is hereby granted to the extent that a plaintiff class for "damages" is certified, pursuant to Fed.R.Civ.P. 23(a) and (b)(3), consisting of all individuals and entities who made retail purchases of gasoline from defendants in Houston County, Alabama since April 15, 1986; and

(4) That the motion be and it is hereby denied in all other respects.

## RECOMMENDATION OF THE MAGISTRATE JUDGE

CARROLL, United States Magistrate Judge.

## I. FACTS

Plaintiffs have alleged that defendants, retail sellers of gasoline in the Dothan, Alabama market, engaged in a conspiracy to fix prices in that market. The alleged conspiracy was continuous from April 15,

1986 to the present. Plaintiffs contend that this alleged conspiracy deprived gasoline purchasers of the benefits of free competition, namely, lower prices at the pump. Plaintiffs accordingly seek certification pursuant to Rule 23 of a class consisting of "all individuals and entities who made retail purchases of gasoline from the Defendants in the Houston County, Alabama area since April 15, 1986."

In the motion for class certification filed October 31, 1990, plaintiffs estimated that there would be well over 10,000 class members actually joining suit. Plaintiffs have proposed to give individual notice, however, to all persons who in 1988 were licensed drivers over the age of 18 in Houston County. There are approximately 54,000 of these persons.[1] Additionally, plaintiffs have proposed to publish summary notice in newspapers. Defendants Southeastern Oil, McGee Oil, Sunshine Oil, Sheffield Oil, Cannon Oil, and Metha Jean Cannon have each filed memoranda opposing class certification, assailing plaintiffs' arguments from every conceivable legal angle. For purposes of this writing, these arguments are treated as though they were set forth by each of the defendants.

Defendants variously assert that class certification would be erroneous for the following reasons: plaintiffs' proposed class is vague, inadequately defined, or overly broad; that this vagueness or broadness renders this lawsuit unmanageable as a class action; that the class representatives lack standing to sue each of the named defendants because each of the named defendants did not inflict a direct and tangible harm on him, and that the same defect exists as to class members; that the sheer number of people who could be class members renders the suit unmanageable as a class action; that a class action is not superior to other means of resolving the controversy; that common issues of law or fact do not predominate over individual issues; that the class representatives do not satisfy the requirements of Rule 23 as to typicality, ability to as-

---

1. This estimate is provided by the plaintiffs.

sume the costs of notice and vigorous prosecution; that the entire plaintiff class cannot meet the typicality requirement of Rule 23; and that at least one of the named plaintiffs has interests antagonistic to those of the class.

The sole question now before the court is whether a nationwide group with a noticed set of 54,000 persons who in 1988 were licensed drivers over the age of 18 in Houston County would be an appropriate damages class[2] for certification in this antitrust conspiracy case under the provisions of Fed.R.Civ.P. 23(a), (b).

The court has carefully studied the cogent arguments advanced by excellent counsel in this case. On the basis of its study, the court finds that the law on the question is mixed but that the practice of many courts of subordinating any speculations about manageability and proof of damages to the policy that animates Rule 23 is to be preferred to premature speculations about draconian case management. Accordingly, the court finds that the class should be certified.

## II. DISCUSSION

It is by now a truism that the class-action lawsuit has become a vehicle of citizen and consumer control over the vagaries of political or market forces. Where the class-action lawsuit is combined with a public policy favoring a private attorney general type of action or a clearly articulated federal policy favoring punishment of wrongdoers for thwarting the common good, Everyman has a potent weapon. A class-action lawsuit in an antitrust case can be such a creature. Where the consuming public is harmed by price-fixing activity, the public interest demands redress, and Congress has clearly decreed that punishment in the form of treble damages is appropriate for violations of the Sherman Act. It may be that a class-action lawsuit is the most fair and efficient means of enforcing the law where antitrust violations have been continuous, widespread, and detrimental to as yet unidentified con-

sumers. Sometimes a class-action lawsuit is the only way in which consumers would know of their rights at all, let alone have a forum for their vindication. This is the position for which the plaintiffs implicitly contend. The court believes that this expresses the best-reasoned view of the courts, as well, dictating that any doubts are to be resolved in favor of granting certification where the class' interests coincide with the public interest.

*Basic Requirements of Rule 23*

 "Class certification is proper if plaintiffs can show that they meet the requirements of Fed.R.Civ.P. 23(a) and also come within one of the provisions of 23(b)." *Wilcox Devel. Co. v. First Interstate Bank of Oregon, et al.*, 97 F.R.D. 440, 443 (D.Ore.1983). The burden of proving that all elements for class certification are met is on the plaintiffs, and failure to meet any one of the elements destroys a class action. *Wilcox*, 97 F.R.D. at 443. Rule 23(a) contains four requirements generally referred to as numerosity, commonality, typicality, and representativeness. Rule 23(b) further requires the plaintiffs to establish that they fall within one of two categories: plaintiffs must establish either that "the party opposing the class has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole" or that "questions of law or fact common to the class predominate over any questions affecting only individual class members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy." Fed.R.Civ.P. 23(b)(2), (3).

 In determining whether common questions of law or fact predominate, the court may consider the interests of plaintiffs in separate prosecutions; the existence of other pending litigation of the controversy; the desirability of prosecuting suit in the forum; and the manageability of the suit as a class action. These factors

---

**2.** By amendment to their complaint, the plaintiffs also seek to certify an injunctive relief class. This is dealt with in a separate recommendation.

are not exhaustive. Fed.R.Civ.P. 23(b)(3). It is to be stressed that plaintiffs must prove *both* that common legal or factual questions predominate and that a class action is the best means of handling the litigation. *See Wilcox,* 97 F.R.D. at 444; *In re Transit Co. Tire Antitrust Litig.,* 67 F.R.D. 59, 72 (W.D.Mo.1975).

■ Denial of certification will be reviewed only for abuse of discretion. *Nichols v. Mobile Bd. of Realtors,* 675 F.2d 671 (5th Cir.1982).

*Rule 23(a) Components*

1. Numerosity

■ The defendants' own argument that the massiveness of the class militates against certification eloquently argues that the numerosity requirement is satisfied. Where joinder as an alternative to class action would be impracticable, the numerosity requirement of Rule 23(a) is satisfied. *See* Fed.R.Civ.P. 23(a). For example, in *Abramovitz v. Ahern,* 96 F.R.D. 208, 215 (D.Conn.1982), the court found joinder impracticable where 500 potential class members had been identified. Other courts have adopted the view that class membership in the hundreds renders joinder impracticable, as well. *See, e.g., In re Glassine & Greaseproof Paper Antitrust Litig.,* 88 F.R.D. 302, 304 (E.D.Pa.1980) (where number of plaintiffs would be at least in the hundreds although exact number is unknown, numerosity requirement is clearly satisfied); *In re Sugar Indus. Antitrust Litig.,* 73 F.R.D. 322 (E.D.Pa.1976) (small claims of many and dispersed plaintiffs prohibit joinder).

■ Circuit precedent directs that, "where the numerosity question is a close one," the court should find that numerosity exists because the class can be decertified later if certification was erroneous. *Evans v. U.S. Pipe & Foundry Co.,* 696 F.2d 925, 930 (11th Cir.1983). Here, the question is not a close one: a possible 54,000 plaintiffs, plus any responding to a general notice, cannot be joined, nor could plaintiffs' estimated 10,000 people. The numerosity requirement of Rule 23 is thus clearly met.

2. Commonality

■ The commonality requirement of Rule 23(a) does not require that identical questions of law or fact are common to the class, only that the issue of liability is common. As one court has expressed the requirements of commonality under the Rule:

Rule 23(a)(2) requires that plaintiffs show that 'there are questions of law or fact common to the class.' Yet not every question of law or fact must be common to every member of the class. The requirement is met if the questions linking the class members are 'substantially related to the resolution of the litigation even though the individuals are not identically situated.' Identical questions are not necessary and factual discrepancies are not fatal to certification. Rule 23(a)(2) may be satisfied if common questions of liability are present despite individual differences in damages. *In re Workers' Compensation,* 130 F.R.D. 99, 104 (D.Minn.1990).

Several courts have held that proof of conspiracy, which is the linchpin of liability, is in itself enough to satisfy the commonality requirement. *In re Folding Carton Antitrust Litig.,* 75 F.R.D. 727, 731 (N.D.Ill.1977) ("[A] nationwide price fixing conspiracy presents questions of law and fact common to the class members [which] predominate over any questions affecting only individual members. . . . [I]t is implicit that the common questions relate to all class members [3]"); *Philadelphia v. American Oil Co.,* 53 F.R.D. 45, 67 (D.N.J.1971) ("In price-fixing antitrust cases, the issues of impact of the conspiracy and damages become one and the same since the amount of damages measures the impact of the

---

**3.** The court is cognizant of the fact that Rule 23(a)(2) governs only the "common questions" analysis, and that the Rule 23(b)(3) predominance requirement must still be met. Few courts are strictly faithful to this analytical and technical distinction, however. The analyses of those courts that are tend to be more exacting in general. *E.g., Workers' Compensation,* 130 F.R.D. at 104 & n. 2; *Davis v. Northside Realty Assoc.,* 95 F.R.D. 39, 43 (N.D.Ga.1982).

illegal conspiracy"); *Alabama v. Blue Bird Body Co., Inc.,* 573 F.2d 309, 317 (5th Cir.1978) (damages may be shown by proof of purchase at a price higher than the competitive rate, so long as causal link between defendant's action and plaintiff's harm is not attenuated); *In re Ampicillin Antitrust Litig.,* 55 F.R.D. 269, 278 (D.D.C.1972).

■ This court has carefully considered the contrary arguments advanced by the defendants and finds that the authorities cited in support of these arguments either address the Rule 23(b)(3) predominance or manageability issues (treated *infra*), or they are distinguishable, or they are not fully supportive of the propositions for which they are cited. For example, the defendants rely on the case of *Trecker v. Manning Implement, Inc.,* 73 F.R.D. 554, 560–61 (N.D.Iowa 1976). However, *Trecker* includes an escape hatch from its central holding that, even where there is a single injury caused by an antitrust conspiracy, issues of damages are always strictly individualized. The *Trecker* court stated that this holding would be inapt "in certain cases where defendants act as a unified whole," 73 F.R.D. at 560, or where "a tight nucleus of common-behaving defendants act[s] as a unified whole" rather than "being govern[ed] by their own pricing policies." *Id.* at 563. This court finds that the present case falls within the *Trecker* exceptions.

For all of these reasons, the commonality requirement of Rule 23(a) has been met.

### 3. Typicality

■ Rule 23(a)(3) requires that the interests of the class representative be "typical" of the class and that he assert essentially the same claim(s) as the putative class. However, "Rule 23(a)(3) does not require that a representative's claims be identical to those of his class; they need only be sufficiently similar to allow the court to conclude that (1) the representative will protect the interests of the class, and (2) there are no antagonistic interests between the representative and the proposed class." *Glassine & Greaseproof Pa-*

*per,* 88 F.R.D. at 304. A named plaintiff is "typical" of the class if he presents the same claims or defenses as the class. As one court has stated it:

In antitrust disputes, '[s]ince the representative parties need prove a conspiracy, its effectuation, and damages therefrom—precisely what the absentees must prove to recover—the representative['s] claims can hardly be considered atypical.' ... The claims of the purported representative parties are co-extensive with those of the potential class members. Each class representative challenges defendants' alleged unlawful anticompetitive activities and, furthermore, seeks monetary recovery for artificially inflated prices ... that have been paid by all other similarly situated purchasers. For these reasons, the named plaintiffs who seek to represent certain potential class members have claims against the various defendants that are typical of those possible class members' charges. *Sugar Indus. Antitrust,* 73 F.R.D. at 336.

*Accord Workers' Compensation,* 130 F.R.D. at 105–06; *Davis v. Northside Realty,* 95 F.R.D. at 43; *Peil v. National Semiconductor Corp.,* 86 F.R.D. 357, 371 (E.D.Pa.1980).

■ Typicality is not destroyed by mere dissimilarity in factual patterns between the class and its representative. *Glassine & Greaseproof Paper,* 88 F.R.D. at 304.

■ Here, the court finds that the named plaintiff has coextensive interests with those of the class. As to any purported conflicts or antagonistic interests, the court aligns itself with those sister courts that find the "typicality" requirement largely duplicative of the "representativeness" requirement: "The requirements of Rule 23(a)(3) have been likened to the requirement that common questions exist, and to the requirement of Rule 23(a)(4) that there be no adverse interests between plaintiff and the class...." *Apanewicz v. General Motors Corp.,* 80 F.R.D. 672, 677 (E.D.Pa.1978) (*citing* 3B *Moore's Federal Practice* 23.06–2, at 23–186 to 23–189 (2d ed. 1978)). *Accord Chmieleski v. City Prods. Corp.,* 71 F.R.D. 118, 151 (W.D.Mo.

1976); *Peil,* 86 F.R.D. at 371. In sum, "[t]he typicality requirement of Rule 23(a)(3) ... closely parallels the adequacy inquiry under Rule 23(a)(4)." *In re Plywood Anti-trust Litig.,* 76 F.R.D. 570, 579 (E.D.La.1976). Atypicality will not dictate denial of certification unless it is clear and it jeopardizes the interests of the class. *Plywood Anti-trust,* 76 F.R.D. at 579 (*quoting Sley v. Jamaica Water & Util., Inc.,* 77 F.R.D. 391, 395 (E.D.Pa.1977)). Accordingly, the court believes that its findings with regard to the adequacy of representation issue, discussed *infra,* dictate that it find that typicality exists.

4. Representativeness

■ *a. Standing to Sue*—The defendants raise the representativeness argument in various forms. The court reads their argument based on standing to sue as one such iteration. On this point, the court reads all applicable legal authorities addressing this point to be distillable to this one premise: a person is not an adequate class representative if he cannot satisfy the case or controversy requirement as it has been developed in the federal courts. As Newburg expresses this central understanding:

> [O]n the one hand the presence of individual standing to raise issues generally, whether or not common to a class, is required from a constitutional perspective. On the other hand, the meeting of such individual standing tests does not automatically entitle the plaintiff to maintain a class action unless the additional qualifications of a class representative under Rule 23 are also met. As set forth in Rule 23(a)(3) and (a)(4), the claims of the plaintiff must be typical of the claims of the class, and the plaintiff must adequately and fairly protect the interests of the class members. A major part of meeting both these qualifications is related to standing concepts. More specifically, they are related to the requirement that the individual injury in fact suffered must arise directly from the violations charged that are common to the class. Simply stated—assuming common issues, the plaintiff must have individual standing in order to raise those common issues. Many courts have expressed this rule of qualification for class representative as a requirement that the class plaintiff have *shared standing* or be a *part of* or *a member of* the class. The rule has otherwise been correctly subsumed in most cases within a discussion of the *typicality* or *adequacy of representation* of the plaintiff under Rule 23. 1 H. Newburg, *Newburg on Class Actions* (2d ed.) § 2.05, at 48.

■ The defendants have failed to demonstrate to this court's satisfaction that any named plaintiff lacks standing to sue in the traditional jurisprudential, "hornbook" sense implicitly adopted by Newburg in the passage quoted above. Bare allegations that particular named plaintiffs have interests antagonistic to those of the class will not suffice when the basis of this allegation is the fact that two of the named plaintiffs once were jointly involved in the business of selling retail gasoline. As one court has held, the fact that some antitrust plaintiffs may actually have benefitted from defendants' illegal activity is relevant to calculating damages, not to determining that these plaintiffs had interests antagonistic to those of the general class. *Plywood Anti-trust,* 76 F.R.D. at 570. This court feels compelled to point out, moreover, that with regard to these former retailers, the defendants have not even shown that they received any benefit from the illegal activity of other defendants and that, in fact, the evidence as well as their willingness to sue on behalf of the class indicates that the opposite is true.

Moreover, the fact that two named plaintiffs years ago sold gas does not negate the presence of a live controversy for constitutional purposes, nor does it render these plaintiffs actual enemies of the class, as defendants suggest. A case involving inside trading provides instruction on both the antagonism and conflict of interest points. In *Mersay v. First Republic Corp. of America,* 43 F.R.D. 465 (S.D.N.Y.1968), the court held that the fact that the named plaintiff was himself an insider in an inside-trading case did not preclude him from

maintaining a class action where the basis of his suit was his status as a defrauded shareholder and where there was no showing of antagonistic interests or actual conflict of interest vis-a-vis the class. The court finds these facts roughly analogous to our own in this case and adopts the reasoning of the *Mersay* court.

To the extent that anything in the case on which the defendants place most reliance, *La Mar v. H & B Novelty & Loan Co.*, 489 F.2d 461 (9th Cir.1973), is inconsistent with the rule set forth in the *Plywood Anti-trust* and *Mersay* cases as well as the weight of scholarly authority, this court finds that *La Mar* is the least persuasive among these authorities and declines to adopt its reasoning.[4]

■■■ Finally, the court notes that it does not read Circuit and Supreme Court holdings in the same way that defendants do. This court reads *Machella v. Cardenas*, 653 F.2d 923 (5th Cir. Unit A 1981), to say only that a class representative is not adequate for Rule 23 purposes where he has no damages and where he proceeds on an entirely different legal theory than does the class he purportedly represents. The court is not persuaded that the defendants have shown this to be true in this case. Similarly, this court reads *O'Shea v. Littleton*, 414 U.S. 488, 494, 94 S.Ct. 669, 675, 38 L.Ed.2d 674 (1974), primarily to require that the named plaintiff satisfy the case or controversy requirement. Again, this court does not find that this essential requirement is failed in this case.

In sum, the defendants have not produced proof of any present conflict between the interests of these two named plaintiffs and the class' interests. Nor have they produced evidence sufficient to establish that the hallmark of standing, a personal stake in the outcome, is absent as to these two plaintiffs. *See generally Newburg on Class Actions*, § 2.07, at 56. No showing has been made as to any other named plaintiff, in the court's opinion.

■■■ The defendants also suggest that each member of the plaintiff class must satisfy an individualized standing inquiry. Authority to the contrary could not be clearer. As Newburg states, invoking the holding of the Supreme Court in *American Pipe & Constr. Co. v. Utah*, 414 U.S. 538, 94 S.Ct. 756, 38 L.Ed.2d 713 (1974):

> In a class action, those represented are, in the words of the Supreme Court, passive members of the class, in contrast to the named plaintiff who is actively prosecuting the litigation in their behalf. These passive members need not make any individual showing of standing, because the standing issue focuses on whether the plaintiff is properly before the court, not whether represented parties or absent class members are properly before the court. *Newburg on Class Actions*, § 2.07, at 53–54.

*b. Adequacy in Terms of Knowledge and Commitment*—The court has reviewed all of the record in this case. It has studied the same depositions that the defendants studied when they asserted the argument that the named plaintiffs were not sufficiently informed of the facts of the litigation, the financial burden of notice, and sundry like issues. Based on its review, this court disagrees with the defendants' conclusion that the named plaintiffs are incapable of prosecuting suit in a diligent and earnest manner. It also disagrees with the stated conclusion that these plaintiffs, being ignorant of their own interests as well as the substance of their claim, will simply capitulate this case to able counsel.

The court is trusting its reading of the record in this regard and drawing the conclusions which it finds warranted. In the exercise of its discretion and mindful of the admonition of *Apanewicz*, 80 F.R.D. 672, that such judgments are necessarily subjective and require case-by-case determination, the court finds that the named plaintiffs can zealously represent the class' interests and that they are otherwise unas-

---

**4.** In so stating, the court does not indicate that it finds that *La Mar* would be apposite in the case at bar. The court could distinguish that case on principle as well as on its facts if it felt the necessity of doing so.

sailable for Rule 23 adequacy of representation purposes, as well.

*The Rule 23(b) Inquiry*

### 1. The Predominance Requirement

██ The defendants object to class certification on the ground that the class cannot be readily defined since we cannot know who bought gasoline in Houston County during the relevant time period and since the class will be massive if all potential members join suit. Defendants contend that the class must be delineated with precision. However, circuit precedent is clear that "[i]t is not necessary that the members of the class be so clearly identified that any member can be presently ascertained." *Carpenter v. Davis,* 424 F.2d 257, 260 (5th Cir.1970). *See also Abramovitz,* 96 F.R.D. at 212–13; *Sugar Indus. Antitrust,* 73 F.R.D. 322. This court finds that a noticed group of Houston County licensed drivers of at least 18 years of age is an ascertainable and circumscribed set of people, since the potential class can be determined initially using official county records. As a practical matter, the court notes that generalized notice by publication to other potential class members would probably not greatly enhance the class.

The alleged vagueness of the proposed class is prelude to defendants' principal argument about the dissimilarity of damages and proof that will attend plaintiffs' claims. This is the meaning of defendants' "vagueness" argument. Their position is that the multiplicity of plaintiffs and the disparity in (and difficulty of) their proofs will lead to individual issues predominating over common issues of law or fact, in contravention of Rule 23(b).

██ The critical issue presented to this court for purposes of the predominance inquiry is whether the fact of conspiracy alone suffices to prove predominance. The parties rightly point out that the law varies widely on this point. The court has studied the cases and concludes on the basis of this study that conspiracy does suffice to meet the predominance requirement. In so doing, it rejects the reasoning of the line of cases cited by the defendants [5], which essentially hold that damages are the gravamen of the complaint rather than conspiracy, and that damages are an inherently individual matter, so that great disparity in that area destroys predominance. Instead, this court subscribes to the view that "issues of liability can be separated from questions of individual damage when deciding if common issues of fact and law predominate over individual questions. In price-fixing antitrust cases the issues of impact of the conspiracy and damages become one and the same since the amount of damages measures the impact of the illegal conspiracy." *Philadelphia v. American Oil Co.,* 53 F.R.D. at 67. The court believes that this view is consonant with the view expressed in *Alabama v. Blue Bird Body Co., Inc.,* 573 F.2d at 317, in which it was held that damages may be shown by proof of purchase at a price higher than the competitive rate, so long as the causal link between the defendant's action and the plaintiff's harm is not attenuated. This court finds this to be merely another way of saying that conspiracy satisfies the Rule 23(b) predominance inquiry. *See also Ampicillin Antitrust,* 55 F.R.D. at 278.

Moreover, this court agrees with those courts that reason that the Rule requires that common questions of law *or* fact predominate and that common questions exist in the mere fact of an allegation of conspiracy. This view is expressed in the much-cited *Folding Carton* case, in which the court stated: "[A] nationwide price fixing conspiracy presents questions of law and fact common to the class members [which] predominate over any questions affecting only individual members.... [I]t is implicit that the common questions relate to all class members." *Folding Carton,* 75 F.R.D. at 731.

---

5. Chief among these cases are *Windham v. American Brands, Inc.,* 565 F.2d 59 (4th Cir. 1977); *Trecker,* 73 F.R.D. at 560–61; *Newberry v. Washington Post Co.,* 71 F.R.D. 25, 27 (D.D.C. 1976); *Gneiting v. Taggares,* 62 F.R.D. 405, 407 (D.Idaho 1973); *Suckow Borax Mines Con. v. Borax Con. Ltd.,* 81 F.Supp. 301 (N.D.Cal.1948).

The *Folding Carton* court found this even though some of the plaintiffs alleged monopolization rather than price-fixing conspiracy claims and despite defendants' contentions that the "infinite diversity of product, marketing practices, and pricing" made Rule 23's predominance requirement impossible to meet; it certified a nationwide class. In doing so, it cited a Supreme Court decision in which the Court had "rejected defendants' arguments that corrugated cartons varied 'as to dimensions, weight, color, and so on' and therefore a conspiracy to fix prices of such 'infinitely' different product units was impossible." 75 F.R.D. at 733 (*quoting United States v. Container Corp. of America*, 393 U.S. 333, 336, 89 S.Ct. 510, 512, 21 L.Ed.2d 526 (1969)). *See also Abramovitz*, 96 F.R.D. at 216; *Davis v. Northside Realty Assoc.*, 95 F.R.D. at 43; *Sugar Indus. Antitrust*, 73 F.R.D. 322; *Morris v. Burchard*, 51 F.R.D. 530, 532 (S.D.N.Y.1971); *Illinois v. Harper & Row Publishers, Inc.*, 301 F.Supp. 484 (N.D.Ill.1969); *Philadelphia Elec. Co. v. Anaconda Amer. Brass Co.*, 43 F.R.D. 452 (E.D.Pa.1968); *Siegel v. Chicken Delight*, 271 F.Supp. 722 (N.D.Cal.1967); *Minnesota v. United States Steel*, 44 F.R.D. 559, 572 (D.Minn.1968). Such courts tend to view the defendants' predominance argument as "a red herring." *In re Master Key Antitrust Litig.*, 1973–2 Trade Cas. para. 74,680 n. 3 (D.Conn.1973).

These courts also tend to stress that the manageability issue is a staple of defendants in antitrust cases. As the court in the *Sugar Industry Antitrust* case expressed it:

> If this court were to adopt defendants' argument and deny [the] class action[ ] because the computation of damages on … an individual basis destroys the 'predominance' requirement of Rule 23(b)(3), it would be tantamount to encouraging wrongdoers to commit great antitrust violations on many consumers in small

amounts so as to raise the spectre of unmanageability to defeat a class action. 73 F.R.D. at 354.

This court finds, based on its review of the foregoing authorities, that the predominance requirement is met.

### 2. Manageability

▆▆▆▆ The trial court's determination as to manageability is reviewable only for abuse of discretion, in this circuit and elsewhere. *Shumate & Co., Inc. v. NASD*, 509 F.2d 147, 155 (5th Cir.1975). *See also Workers' Compensation*, 130 F.R.D. at 103; *De La Fuente v. Stokely–Van Camp*, 713 F.2d 225, 233 (7th Cir.1983). There is also compelling authority for the proposition that a refusal to certify on grounds of unmanageability is not favored. *See, e.g., Workers' Compensation*, 130 F.R.D. at 110.

The defendants nonetheless urge that the class would be unmanageable and direct the court's attention to a number of cases in support of this argument. All of these cases raise the spectre of "mini-trials" as to damages.[6] This court has studied these authorities and finds them distinguishable from the instant case. Moreover, even if this were not so, this court finds that there is greater value in the admonitions of cases favoring the plaintiffs' position on the "mini-trials" issue. The court agrees with the position taken by the *Workers' Compensation* court when it cautioned:

> "The total amount of time spent on a common issue compared to time spent on individual issues is immaterial. The mere existence of individual questions such as damages does not automatically preclude satisfaction of the predominance requirement, so long as there is some common proof to adequately demonstrate some damage to each plaintiff.

---

6. *See, e.g., Windham v. American Brands*, 565 F.2d at 66; *Wilcox*, 97 F.R.D. at 445. Other cases also disapprove of certification where proof of individual injuries and damages would be inordinately time-consuming. *See, e.g., Wilensky v. Olympic Airways*, 73 F.R.D. 473, 477 (E.D.Pa.1977); *Chmieleski*, 71 F.R.D. at 160; *Newberry*, 71 F.R.D. at 27; *Trecker*, 73 F.R.D. at 563; *Plekowski v. Ralston Purina Co.*, 68 F.R.D. 443, 455 (M.D.Ga.1975); *Transit Company Tire Antitrust*, 67 F.R.D. at 74–75; *Hettinger v. Glass Specialty Co., Inc.*, 59 F.R.D. 286, 294 (N.D.Ill. 1973); *Gneiting*, 62 F.R.D. at 406, 408.

Individualized, separate trials—mini-trials—on individual issues of fact are not a bar to the use of the class action procedure." 130 F.R.D. at 108 (citations omitted).

See also Davis v. Northside Realty Assoc., Inc., 95 F.R.D. at 45, 46 (where proof of liability can be made in a general way, certification is proper, so long as general proof is reliable); Simer v. Rios, 661 F.2d 655, 674 (7th Cir.1981) ("The use of separate trials on individual issues of fact should not be an absolute bar to the use of the class action device"); Folding Carton, 75 F.R.D. at 735 ("Even if the damage determinations have to be made on an individual basis, this should not militate against class certification").

■■■ The court is not particularly persuaded by the other arguments presented by defendants as to the homogeneity or fungibility of the overcharged product or the ability of the court to apply a generic or mechanical damages formula. This court is not willing, at this juncture, to deprive consumers of a means and forum for recovery by essentially standing Blue Bird Body on its head, as apparently was done in Moore v. Southeast Toyota Distribs., Inc., 1982 WL 1841. In that case, the court conceded that "the crucial legal questions, as well as many of the factual ones, are likely to be common to the class as a whole." Moore, 34 Fed.R.Serv.2d at 824. However, the court noted that plaintiffs' argument that "injury can be assumed simply from proof of purchase" was appropriate only in cases where the sale involved was of a fungible or homogeneous product. It found that the product at issue was neither. Id. at 826.[7] The court denied certification because the product was non-homogeneous and no formula proposed to

it would be evenhanded among class members or fair to defendants.

This court believes that the Moore decision is not in harmony with the larger teaching of Blue Bird Body, and it further believes that it could not reach the same conclusion as did the Moore court with regard to homogeneity or fungibility, because that inquiry is necessarily subjective. Defendants have stressed that grades of gasoline vary and that gasoline marketing is a complex and unique enterprise. One case that has dealt with the homogeneity question is Davis v. Northside Realty Assoc., Inc. The Davis court drew the mechanical formula versus individualized proof dichotomy, and viewed the damages to be more susceptible of mechanical proof where the product was homogeneous. Davis, 95 F.R.D. at 46. The court stated:

A certain category of price fixing cases is suited for class treatment by virtue of their relative factual simplicity—an unlawful overcharge with respect to a homogeneous or fungible product ... which was marketed in a similar manner throughout the geographic area is one such type. In this setting, impact and buyer become almost synonymous; therefore, once the illegal overcharge as to the homogeneous product has been established, it is most reasonable to assume injury or impact upon a showing of proof of purchase. Id. (citing Blue Bird Body, 573 F.2d at 324).

The court went on to find that the services of a real estate broker were homogeneous, because the services were standard and the alleged conspiracy was the setting of the 7% fee, which obtained regardless of the broker's success in a transaction. Because the services were homogeneous, "a court or jury can determine proof of impact in an almost mechanical fashion." Id. at 47.[8]

---

**7.** The product at issue was a "protective package" of rustproofing, etc. sold with new Toyota automobiles. The plaintiffs' proposed "generic" formula could not have accounted for the purchase of other options or accessories besides the protective package, nor could it account for variations in driving a bargain below the sticker price among customers or trade-in values. See 34 Fed.R.Serv.2d at 826.

**8.** An exactly contrary result was upheld on appeal in Nichols v. Mobile Bd. of Realtors, 675 F.2d 671 (5th Cir.1982), in which the trial judge's decertification was based on the fact that he found real estate brokerage services nonhomogeneous. The fifth circuit in Nichols left the question of the homogeneity of real estate brokers' services open, finding only that the trial judge had not abused his discretion. Because the narrow issue in Nichols was abuse of discre-

This court believes that, if brokerage services are sufficiently homogeneous, so is gasoline. To argue that three or four grades of gasoline are nonhomogeneous, so that certification may be defeated, strikes this court as inconsonant with the principle articulated by the Supreme Court in *United States v. Container Corp. of America*, 393 U.S. at 336, 89 S.Ct. at 512, in which the court rejected a nonhomogeneity argument styled as a lack of predominance argument. Moreover, the view of the *Davis* court strikes this court as in harmony with the *Blue Bird Body* decision, which this court must respect.

Again, this court finds that policy is not an insignificant factor here. It endorses the proposition that "denial of class certification because of suspected manageability problems is disfavored among both the courts and the legal commentators because a court refusing to certify a class action on the basis of vaguely perceived manageability obstacles is acting counter to the policy behind Rule 23, and because the court is discounting unduly its power and creativity in dealing with a class action flexibly as difficulties arise." *Sugar Indus. Antitrust*, 73 F.R.D. at 356.

Defendants also rely extensively on the *Hotel Telephone Charges* case out of the Ninth Circuit. There, the plaintiffs sought to certify a class of 40 million people allegedly defrauded of the sum of $2.00 apiece by any one of 600 hotels which had conspired to add a surcharge for telephone service to the stated rate. The class was to be nationwide in scope. The claims were both federal antitrust and state-law fraud claims. The state claims would require proof of false representation as to the price of telephone calls as well as individual reliance on the misrepresentation. *In re Hotel Telephone Charges*, 500 F.2d 86, 88 (9th Cir.1974). A common-sense observation would inform one that the case law on fraud could vary among jurisdictions, making matters even more complex. The court quoted with approval the language of a district court in a case involving an alleged fraudulent surcharge and class certification, this court finds *Davis* to be persuasive

tion: "[T]hese allegations raise such individualized questions of law and fact as to overwhelm whatever kernel of common issues might be involved; ... with ... questions of knowledge of the surcharge, reliance on the alleged misrepresentation, and failure to disclose to each plaintiff, an adjudication of the 'common' question of conspiracy would not advance matters very far at all." *Id.* at 89.

*Hotel Telephone Charges* is readily distinguishable from the case at bar. All of the factfinding that some courts have found to accompany a fraud or misrepresentation claim would not be present here. Nor would there be an admixture of federal and state-law claims. Finally, the level of enormity of the undertaking is not equivalent. 600 defendants and 40 million potential plaintiffs could never be manageable litigants in even the most liberal imagination. *Hotel Telephone Charges* is, then, not as valuable a weapon in defendants' arsenal as their briefs would lead one to suspect, and this court finds it inapposite.

This court also finds defendants' reliance on *Philadelphia v. American Oil Co.* to be misplaced. That was a gasoline price-fixing case in which the court certified a class of 550 taxicab companies in a three-state area, 10,000 bulk purchasers, and several governmental agencies in three states. Notably, however, it refused to certify a class of six million retail consumers in the three states.

Almost all of the companies involved in that case had tradenames familiar to most American drivers (Mobil, ARCO, American, Sinclair). The conspiracy alleged against these defendants was substantially the same as in the case at bar. *See* 53 F.R.D. at 47–48. This conspiracy allegedly continued for 10 years. While the case admittedly involves gasoline and price-fixing, there are significant differences in the factual patterns of that case and our own. In that case, the big oil companies sold their products to over 18,399 stations and over 14,000 convenience stores and garages, which then charged the customers whatever their independent business judgment counseled. authority.

For our purposes, the case is really reducible to two ideas: (1) that the impact (actual damages per victim) would not cause individual questions to predominate, and (2) that a class of retail purchasers could not be certified where "[g]asoline was purchased in many different ways, at different prices and in varying quantities and qualities." *Id.* at 64. The first point has already been addressed; the second is not any more convincing when applied to this case than is the homogeneity argument. Finally, of course, 54,000 or 10,000 is far less than six million, and Dothan, Alabama is a contained market.

Large classes were also certified in *Davis v. Northside Realty Assoc., Inc.*, 95 F.R.D. 39 (20–30,000 people in a 19–county area, on a finding that real estate brokers' services were "homogeneous"); *Roper v. Consurve, Inc.*, 578 F.2d 1106 (5th Cir. 1978) (90,000 people, with average damages of only $100 each), and the *Antibiotic Antitrust Actions*, 333 F.Supp. at 290 (average trebled damages varying from $366 to $600 among the 4,851,000 households in California alone did not mandate denial of certification). In citing these cases, this court does not mean to imply that it has reached its conclusion on the basis of "body counts." However, the court does find it relevant that other courts have certified classes in which arguably greater manageability problems were presented, and the decisions of these courts are a useful reminder that the courts have the fortitude and resourcefulness to do the job of providing a forum for the vindication of rights.

*Superiority of the Class–Action Device*

■ The determination of superiority is discretionary. In deciding whether to certify the class, "a primary determination to be made is whether the class action is superior to, and not just as good as, other available methods for handling the controversy, and such a determination lies in an area where the trial court's discretion is paramount." *Rutledge v. Elec. Hose & Rubber Co.*, 511 F.2d 668 (9th Cir.1975) (citations omitted). This is in keeping with the early and well-known case of *In re Antibiotic Antitrust Actions*, 333 F.Supp. 278 (S.D.N.Y.1971), in which the court held that manageability problems are significant only if they render a class action inferior to other means of litigating the controversy.

The *Antibiotic Antitrust Actions* court found that simple restitution was one reason that the class-action device was superior to other methods of adjudication. As the court expressed it: "[W]e would be hesitant to conclude that conspiring defendants may freely engage in predatory price practices to the detriment of millions of individual consumers and then claim the freedom to keep their ill-gotten gains which, once lodged in the corporate coffers, are said to become a 'pot of gold' inaccessible to the mulcted consumers because they are many and their individual claims small." 333 F.Supp. at 282–83.

■ This court has carefully considered the arguments to the contrary and has considered the conclusion that was reached in a case to which the defendants call the court's attention, *Philadelphia v. American Oil.* There, the court said that it realized that its failure to certify a class would mean that "the bulk of the ill-gotten gains reaped by defendants through their assumed conspiracy will remain untouched within their corporate coffers." 53 F.R.D. at 73. However, the court concluded, "Although [we] recognize[ ] the importance of private antitrust actions to help enforce the antitrust laws, it is not believed that Rule 23 was intended to permit a redress for all wrongs committed under the antitrust laws." *Id.*

This court, however, believes that the *Antibiotic Antitrust* court has the better view and would agree with the Fifth Circuit's statement that "the class action device is an enforcing mechanism for congressionally sanctioned goals." *Greenhaw v. Lubbock County Bev. Ass'n*, 721 F.2d 1019, 1024 (5th Cir.1983). Accordingly, since the other requirements of Rule 23 are met, and since the court believes that a multiplicity of small claims deluging the court would be far more disruptive than would this class action, the court finds that the class-action device is the superior means of conducting this litigation. This

case presents an issue of vindication of rights that, in the absence of collective action, would not be vindicated. Fairness as well as efficiency would be served by class certification.

### III. CONCLUSION

The weight of authority suggests that "even in doubtful cases the maintenance of the class action is favored," because decertification is always possible, *Alameda Oil Co. v. Ideal Basic Indus.*, 326 F.Supp. 98, 101, 105 (D.Colo.1971), and that wherever a question exists, "the court should give the benefit of the doubt to approving the class." *Workers' Compensation*, 130 F.R.D. at 103 (citations omitted); *Peil*, 86 F.R.D. at 364. The court finds that, if it does have any doubts pursuant to the areas discussed *infra*, the law requires that they be resolved in favor of certification.

For the foregoing reasons, it is the RECOMMENDATION of the Magistrate Judge that the motion for certification of a damages class be GRANTED in this cause and that this court, pursuant to Rule 23(b)(3) of the *Federal Rules of Civil Procedure*, certify a class consisting of all individuals and entities who made retail purchases of gasoline from the defendants in the Houston County, Alabama area since April 15, 1986.

DONE this 9th day of December, 1991.